Jerry MAHAFFEY, Petitioner–Appellant,

v.

Thomas PAGE, Warden, Respondent–Appellee.

No. 97–4137.

United States Court of Appeals,
Seventh Circuit.

Argued May 5, 1998.

Decided Nov. 19, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 15, 1999.

Alan M. Freedman, Gary Prichard (argued), Midwest Center for Justice, Ltd., Chicago, IL, for Petitioner–Appellant.

Deborah L. Ahlstrand, Office of the Atty. Gen., Civil Appeals Div., Chicago, IL, Renee G. Goldfarb (argued), Office of the State's Atty. of Cook County, Criminal Appeals Division, Chicago, IL, for Respondent–Appellee.

Before CUMMINGS, FLAUM, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This case is before us on rehearing by the panel solely of the *Batson* issue. The details of the crime are set forth in our prior opinion, *Mahaffey v. Page*, 151 F.3d 671 (7th Cir.1998). We need only review the facts relevant to the *Batson* issue.

Jerry Mahaffey was convicted of murder, attempted murder, aggravated battery, home invasion, armed robbery, residential burglary, and theft, and ultimately sentenced to death, by a jury comprised of eleven whites and one Asian–American. Mahaffey and his brother, African–Americans from the South side of Chicago, were accused of these heinous crimes against three white victims from the North side of the city. The State exercised peremptory challenges against all seven African–American members of the jury venire.

While Mahaffey's direct appeal to the Illinois Supreme Court was pending, the United States Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In accordance with the mandate of *Batson*, the Illinois Supreme Court remanded Mahaffey's case, ordering the trial court to conduct a hearing and to determine whether jury selection complied with that decision. After conducting that hearing, the state trial judge concluded that Mahaffey had failed to establish a prima facie case of discrimination under *Batson*. The Illinois Supreme Court affirmed on that basis, and the federal district court subsequently declined to issue a writ of habeas corpus. In finding no *Batson* violation in the selection of Mahaffey's jury, both the state supreme court and the federal district court effectively deferred to the trial court's conclusion that Mahaffey had failed to establish a prima facie case. *See People v. Mahaffey*, 128 Ill.2d 388, 132 Ill.Dec. 366, 539 N.E.2d 1172, 1184–85 (Ill.1989), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3291, 111 L.Ed.2d 799 (1990); *United States ex rel. Mahaffey v. Peters*, 978 F.Supp. 762, 781–82 (N.D.Ill.1997).

## I.

■ As an initial matter, we must determine whether the trial court ever proceeded beyond the prima facie determination in this case. The petition for rehearing and answer to that petition have clarified, and our review of the record confirms, that the trial court never ventured beyond that first stage of the *Batson* inquiry. Indeed, all courts that have reviewed this case to this point are in agreement on that point, and their construction of the record is entitled to deference. Moreover, the trial court never developed the facts that would be necessary for the next stages of the *Batson* analysis; specifically, the court did not elicit facts to compare excluded African–American jurors with accepted jurors, instead focusing on a comparison of excluded jurors with one another. Finally, because the trial court dismissed Mahaffey's *Batson* claim at the prima facie stage, the government was never required to articulate its actual reasons for striking the African–American jurors and defense counsel consequently was never given an opportunity to address the prosecutor's true reasons for the exclusions.

■ A *Batson* hearing normally progresses through 3 stages: (1) the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race; (2) once that

showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question; (3) the trial court, after hearing the defendant's response, must decide whether those reasons are pretextual and whether the defendant has thus carried his burden of proving purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79, 96–98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). There are allowable deviations from this three-step process. In *Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), the Supreme Court held that if the prosecutor immediately proceeds to give race-neutral reasons and the trial court rules on the ultimate question of intentional discrimination, there is no constitutional problem merely because the court bypassed the prima facie stage.

In this case, however, the court never proceeded beyond the prima facie determination, and the State was not called upon to articulate its reasons for exercising peremptory challenges against the African–American members of the venire. In addressing Mahaffey's prima facie showing, the State did note certain explanations for its exclusions of the African–American venirepersons that were "apparent" from the record. The discussion of those "apparent" reasons for exclusion has generated some inconsistent arguments in the briefs as to just how far the *Batson* inquiry proceeded. Mahaffey argues, for example, that the district court erred in failing to proceed beyond the prima facie stage of the analysis. He further contends, however, that the explanations the State

proffered for excluding the African–American jurors were pretextual, and that we should find discrimination as a matter of law. This implies that the State provided its actual reasons for the challenges with respect to every African–American excluded, and that we can reach the ultimate issue of discrimination as the court did in *Hernandez*. Somewhat inconsistently, Mahaffey also argues that if we find that the reasons are not pretextual, the case should be remanded to allow him an opportunity to address the government's actual reasons individually.

■■■ The defendant's characterization of the *Batson* hearing in this case unnecessarily obfuscates the only issue properly before this Court. The state trial court, state supreme court, district court, and the State itself in its brief, all maintain that the *Batson* hearing was limited to the prima facie determination. Although the State provided more detailed reasons for its challenges than is perhaps necessary at that stage, it has consistently asserted that it never provided the actual reasons for its challenges of each potential African–American juror. *See, e.g.,* Brief of Attorney General at p.13 (arguing that only "apparent," not actual reasons were provided and declaring that "the prosecution never tendered 'race-neutral' reasons at trial, nor during any appellate proceeding, state or federal."). Instead, the State limited its explanations to identification of "apparent" similarities on the record between excluded white venirepersons and excluded African–Americans, arguing that those apparent similarities negated any inference of discrimination.[1] Those apparent similarities, however,

---

1. This difference between actual and apparent reasons is not one of semantics. Apparent reasons are those that are discernible on the record, regardless of whether they were the actual motivation for the challenges. As the Attorney General argued and the district court found, the apparent explanations were "directed to explaining the pattern of challenges" used during the jury selection. One could imagine a case in which all stricken jurors were attorneys, for example, in which the apparent explanation could negate an inference of race discrimination, regardless of whether the attorney status was the actual reason for each strike. In such a case, the apparent reasons might be sufficiently convincing that the court would not require the prosecutor to come forward with actual reasons.

The discussion of apparent reasons for the challenges in this case thus consisted of pointing to characteristics on the face of the voir dire record which demonstrated a similarity among stricken jurors. For instance, the prosecutor pointed out that both an African–American and a white juror excluded were under age 25. Such "apparent" reasons were designed to indicate a pattern of challenges against African–American members of the venire explainable on grounds other than race. If a prima facie violation had been found, the State would have been forced to identify a race-neutral justification for each excluded African–American juror (its "actual" reasons), and defense counsel would have been able to rebut that justification for each juror. Continuing the above example, if the prosecutor had asserted age as the actual reason for excluding

cannot be mistaken for the actual reasons for the challenges. Only after the defendant establishes a prima facie case is the State required to reveal its actual reasons for the exclusions. Moreover, at that stage, the relevant comparison is between the excluded African–Americans and the jurors that were allowed to sit on the jury. Because the trial judge never reviewed the actual reasons for the challenges and did not compare the excluded African–American venirepersons with those accepted on the jury, we are limited on appeal to determining whether the prima facie showing was met. .

We note that this conclusion would be mandated in any case because the trial court informed Mahaffey that he could respond to the race-neutral reasons after the prima facie determination was made. Although Mahaffey's counsel argued at some length that the challenges demonstrated discrimination, he also repeatedly noted that he would respond in more detail if the court determined that the prima facie showing was met. The court ultimately found to the contrary, of course, and thus Mahaffey never had the opportunity to address the State's rationale for excluding the African–American jurors. In those circumstances, it would be inappropriate for us to proceed on appeal to the ultimate issue of discrimination even with a more complete record.

## II.

■ Therefore, the only issue properly before us today is whether Mahaffey established a prima facie case of discrimination. Unlike the ultimate issue of discriminatory intent, which as a factual question is entitled to deferential review (*see Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. 1712), the preliminary question of whether a prima facie case has been shown presents a mixed question of law and fact (*see, e.g., United States v. Bergodere,* 40 F.3d 512, 516 (1st Cir.1994), *cert. denied,* 514 U.S. 1055, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995); *United States v. Alvarado,* 891 F.2d 439, 443 (2d Cir.1989), *vacated on other grounds,* 497 U.S. 543, 110 S.Ct.

2995, 111 L.Ed.2d 439 (1990)), which the appellate courts should review de novo. Although some of our sister circuits have utilized a clearly erroneous standard in their review of that question (*see Bergodere,* 40 F.3d at 516 (citing cases)), the Supreme Court's recent decision in *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), points in the direction of de novo review. The question of whether an inference of discrimination may be drawn from a set of undisputed facts relating to the racial makeup of the jury venire and the prosecutor's exercise of peremptory challenges is, like the probable cause question before the Court in *Ornelas,* one over which the appellate courts should exercise a degree of control that a clear error standard would not afford. *Id.* at 697, 116 S.Ct. 1657. As in *Ornelas,* factual scenarios will recur in this context, and de novo review would allow for a measure of consistency in the treatment of similar factual settings, rather than permitting different trial judges to reach inconsistent conclusions about the prima facie case on the same or similar facts. *Id.* at 697–98, 116 S.Ct. 1657; *cf. Mahaffey,* 978 F.Supp. at 781 ("This is not to say that Judge Hett could not have decided the question the other way, but on this record, given his participation in the jury selection, his judgment that there was no prima facie case was permissible."). Ultimately, however, the standard of review question is largely beside the point, for even if a more deferential standard were applied, we would have to conclude that Judge Hett clearly erred in finding that no inference of discrimination arose from the facts and circumstances here.

■ We recognize, of course, that *Batson* requires us to look to all the relevant facts and circumstances in assessing whether an inference of discrimination should arise. *See Batson,* 476 U.S. at 96, 106 S.Ct. 1712. Yet by far the most important factor in this case, and one that the Illinois courts were too quick to overlook, is that all seven African–American members of the jury venire were excused by the State, meaning that

the juror, the defense counsel could have argued that it was pretextual because four white jurors

in their twenties were not excluded.

not a single member of Mahaffey's own race was seated on the jury that decided his fate.[2] This is therefore not a case in which only one or two members of a particular racial group were excused while other members of the same racial group remained; it is instead a case where the State exercised seven of thirteen total challenges to exclude every member of Mahaffey's own race. That is fairly compelling evidence of discrimination, at least at the prima facie case stage, where the State has not yet been required to articulate its race-neutral reasons for striking the African–American jurors. An inference of discrimination is particularly appropriate in light of the Supreme Court's admonition in *Batson* that we be mindful of the fact that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" 476 U.S. at 96, 106 S.Ct. 1712 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 97 L.Ed. 1244 (1953)). The Supreme Court in *Batson* emphasized that an inference of discrimination may arise where the prosecutor makes a pattern of strikes against African–American jurors. *Id.* at 97, 106 S.Ct. 1712. Such a pattern plainly is evident in the State's juror challenges here, where the prosecutor excused each and every African–American member of the jury venire. *See McCain v. Gramley*, 96 F.3d 288, 292 (7th Cir.1996) (inference of discrimination may be drawn "where there are only a few members of a racial group on the venire panel and one party strikes each one of them"), *cert. denied*, —— U.S. ——, 117 S.Ct. 1320, 137 L.Ed.2d 482 (1997); *United States v. Sowa*, 34 F.3d 447, 452 (7th Cir.1994) (in challenge to use of peremptory challenges by defense counsel, court held that "[t]he government easily made its prima facie case that the peremptory challenges were motivated by race; each and every black venireperson [six in all] was challenged."), *cert. denied*, 513 U.S. 1117, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995); *Splunge v. Clark*, 960 F.2d 705, 707 (7th Cir.1992) (prima facie case shown where both African–American members of the jury venire were excluded by the prosecution).

And lest we forget, the crimes at issue in this case were obviously racially-sensitive—Mahaffey, a young African–American male from Chicago's South side, was charged with murdering a white couple on the North side, and with attempting to murder their young son. This is therefore a case in which the racial composition of the jury could potentially be a factor in how the jury might respond to Mahaffey's defense at trial, as well as to his arguments in mitigation at the capital sentencing phase. *See Williams v. Chrans*, 945 F.2d 926, 943–45 (7th Cir.1991), *cert. denied*, 505 U.S. 1208, 112 S.Ct. 3002, 120 L.Ed.2d 877 (1992). Before the judgment of the essentially all-white jury in this case is executed, the State at least should be required to explain why it excused each venire person of Mahaffey's own race, and Mahaffey should be allowed to respond to those reasons.

We are sensitive to the fact that Judge Hett was present during the jury voir dire and that, in his view, all of the relevant facts and circumstances did not produce an inference of discrimination. Yet Judge Hett came to that conclusion only after comparing the seven African–Americans whom the State excused from the jury with the six whites who were similarly excused. The state trial judge essentially found that because the excused African–Americans and the excused whites had similar characteristics, an inference of discrimination should not be drawn from the decision to strike the African–Americans. *Batson* Hearing Tr. at 54. But rather than comparing the excused African–Americans to the excused whites, the trial judge should have been comparing the excused African–Americans to the jurors who remained, for only through such a comparison could the judge assess whether race played any role in the State's challenges. If an excused African–American juror had characteristics and opinions that were similar to those of a juror who sat, for example, then an obvious inference, at least prior to the articulation of a

---

**2.** There was of course an African–American alternate who sat through Mahaffey's trial, but she did not deliberate on the verdicts either at the conviction or penalty phase, and she was admitted on the jury only after the State had exhausted its peremptory challenges.

race-neutral explanation for the strike, would be that the strike was racially-motivated. As far as the voir dire record would reveal, the stricken juror's race would be the only characteristic distinguishing the African–American from the juror who was retained.

It is significant in that regard that Judge Hett found at the *Batson* hearing that the whites who sat on Mahaffey's jury were similar to the African–Americans the State had excused. *Id.* at 51. That finding suggests that the State may have used its peremptory challenges to single out African–American venirepersons for exclusion, in comparison to whites with the same or similar characteristics. And the inference of discrimination that would arise in that circumstance is unaffected by the fact that some whites with the same characteristics also may have been excused—the State still struck all the African–Americans while retaining some of the whites, and despite having strikes available that went unused.

In short, the showing made by Mahaffey at the *Batson* hearing was sufficient as a matter of law to require the State to come forward with race-neutral explanations for each of the challenged strikes. Because the court never required the State to do so, Mahaffey has established a *Batson* violation. The proper remedy for this *Batson* violation is the one set forth in *Coulter v. Gilmore*, 155 F.3d 912, 922 (7th Cir.1998). We therefore REVERSE the judgment of the district court and order that the writ be granted unless, within 120 days, the state trial court holds a new hearing on Mahaffey's *Batson* claim in accordance with this opinion. Our prior opinion in *Mahaffey v. Page*, 151 F.3d 671 (7th Cir. 1998), is vacated to the extent that it is inconsistent with this decision.

FLAUM, Circuit Judge, dissenting.

Based on the analysis advanced in my prior opinion in this case, *Mahaffey v. Page*, 151 F.3d 671, 675–680 (7th Cir.1998), I respectfully dissent. I remain of the view that the constitutional commands of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) have been met in this matter. Accordingly, I would deny the writ

of habeas corpus and affirm the decision of the district court.