OPINION.
Defendant-appellant Aaron Dockery has taken the instant appeal from his conviction, following a jury trial, for failure to comply with the order or signal of a police officer, in violation of R.C. 2921.33(B). He advances on appeal four assignments of error. Because our review of the appellant's fourth assignment of error requires supplementation of the record on appeal, we remand this case to the common pleas court for that limited purpose.
The appellant contends in his fourth assignment of error that the trial court erred in permitting the prosecution to exercise a peremptory challenge in a racially discriminatory manner.
The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination in the exercise of a peremptory challenge to excuse a juror on account of his race. See Batson v. Kentucky (1986),476 U.S. 79, 89, 106 S.Ct. 1712, 1719; State v. Hernandez (1992),63 Ohio St.3d 577, 581, 589 N.E.2d 1310, 1313, certiorari denied (1992),506 U.S. 898, 113 S.Ct. 279. The United States Supreme Court has promulgated a three-step procedure for evaluating a claim that racial discrimination has motivated the exercise of a peremptory challenge: First, the party opposing the peremptory challenge must establish a prima facie case of purposeful discrimination in the exercise of the challenge. If a prima facie case has been established, the burden of production shifts to the proponent of the challenge to tender a race-neutral explanation. The trial court must then determine whether the challenge's opponent has carried its ultimate burden of proving purposeful discrimination. See Hernandez v. New York (1991), 500 U.S. 352,358-359, 111 S.Ct. 1859, 1866-1867; State v. Hernandez, supra at 581-582, 589 N.E.2d at 1313 (citing Batson, supra at 96-98,106 S.Ct. at 1723-1724); State v. Walker (2000), 139 Ohio App.3d 52, 742 N.E.2d 1173. A determination that the challenge's opponent has failed to prove purposeful discrimination will not be reversed on appeal unless that determination can be said to have been "`clearly erroneous.'" State v.Hernandez, supra at 582-583, 589 N.E.2d at 1313-1314 (quoting Hernandezv. New York [1991], 500 U.S. 352, 369, 111 S.Ct. 1859, 1871).
In the proceedings below, the ultimate composition of the appellant's petit jury was determined by the defense's exercise of peremptory challenges to strike two prospective jurors and the prosecution's peremptory strikes against prospective juror Wright and a second prospective juror, who (we may presume from defense counsel's Batson
argument) was not African-American. In the course of the voir dire examination, the only significant exchange between the prosecution and the prospective jurors was prompted by the prosecution's inquiry into the prospective jurors' prior dealings with law enforcement officials. Wright, in response, disclosed that, eight years earlier, her son had been convicted in Clermont County, Ohio, of a criminal offense, the nature of which Wright declined to disclose, but for which her son remained incarcerated at the time of the appellant's trial. Upon further questioning, Wright denied that that experience had, "in any way, created any type of perception on [her] part of the prosecutor's office [or] police officers * * * ."
When the prosecution exercised its first peremptory challenge against Wright, defense counsel offered a prompt and specific objection to the challenge, with the following explanation:
 The effect of that peremptory [challenge] is to remove from the jury the only African-American juror. This is a case where the state's witnesses will all be Caucasian, the defense witnesses will all be African-American.
 On that basis, counsel requested that the trial court either disallow the challenge or declare a mistrial and resume the proceedings with a new venire. The court summarily denied the request without calling upon the prosecution to provide a race-neutral explanation and replaced Wright on the panel with a juror who (again, we may presume) was not African-American.
The proponent of a peremptory challenge that excludes from a jury a member of a cognizable racial group assumes the burden of providing a race-neutral explanation for the challenge only if the challenge's opponent has established a prima facie case of purposeful racial discrimination in the exercise of the challenge. To establish a prima facie case, the opponent of the challenge must demonstrate (1) that the challenge was used to strike a member of a cognizable racial group, and (2) that this fact and other relevant circumstances raise an inference that the challenge was used to exclude the juror on account of his race. See State v. Johnson (2000), 88 Ohio St.3d 95, 116, 723 N.E.2d 1054,1073, certiorari denied (2000), 531 U.S. 889, 121 S.Ct. 212.
In endeavoring to raise the requisite inference of racial discrimination, the opponent of the challenge may "rely on the * * * [indisputable] fact that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.'" Batson, supra at 96, 106 S.Ct. at 1723 (quoting Averyv. Georgia [1953], 345 U.S. 559, 562, 73 S.Ct. 891, 892, and quoted inState v. Hernandez, supra at 582, 589 N.E.2d at 1313). The determination of whether the requisite initial showing has been made turns upon this fact and other "relevant circumstances," including questions and statements by the proponent of the strike during the voir dire examination and in the exercise of the challenge, and the emergence of a "`pattern' of strikes" against venire members. See id. at 96-97,106 S.Ct. at 1723; Hicks v. Westinghouse Materials Co. (1997),78 Ohio St.3d 95, 98, 676 N.E.2d 872, 876. But, "[u]nlike the ultimate issue of discriminatory intent, which as a factual question is entitled to deferential review * * *, the preliminary question of whether a prima facie case has been shown presents a mixed question of law and fact * * * which the appellate courts should review de novo." Mahaffey v. Page
(C.A.7, 1998) 162 F.3d 481, 484, certiorari denied (1999), 526 U.S. 1127,119 S.Ct. 1786.[1]
In the proceedings below, the trial court's conduct in summarily denying the appellant's Batson claim without first soliciting from the prosecution a race-neutral explanation suggests that the court had effectively concluded that an inquiry into the prosecution's motives was not required because the appellant had failed to make a prima facie case. We conclude, to the contrary, that the relevant facts and circumstances, including the absence of any African-American on the appellant's jury, the prospect that prosecution and defense witnesses would be divided along racial lines, and Wright's statement that her son's experience with the criminal-justice system had not predisposed her against law enforcement authorities, were sufficient, as a matter of law, to give rise to an inference that the prosecution had exercised its peremptory challenge to exclude Wright on account of her race.
The state argues in its brief that "Wright['s] obvious negative experience with her son's contacts with the criminal justice system and her evasiveness belie any inference that her strike was racially motivated." There is some authority for the proposition that the presence in the record of an "apparent" or "obvious" race-neutral reason for a peremptory challenge might either preclude the establishment of a prima facie case or provide a basis for affirming the denial of a Batson
claim. See, e.g., Johnson v. Campbell (C.A.9, 1996), 92 F.3d 951, 953-954
(holding that the presence in the record of an "obvious" reason for a peremptory challenge, along with the absence of any showing that the juror's sexual orientation was the reason for the challenge, was "sufficient to convince" the reviewing court that the plaintiff had failed to establish a prima facie case); Capers v. Singletary (C.A.11, 1993), 989 F.2d 442, 446-447 (holding that a reviewing court could consider neutral reasons for the exercise of a peremptory challenge that were apparent on the record of voir dire to determine whether a prima facie case had been established); United States v. Dennis (C.A.11, 1986), 804 F.2d 1208, 1210-1211 and fn. 22, certiorari denied (1987),481 U.S. 1037, 107 S.Ct. 1973 (holding that, although the trial court had failed to make a clear determination regarding the prima facie case, a remand was unnecessary, because a determination by the trial court of aBatson violation would have constituted reversible error, when the record reflected obvious reasons for the exercise of the challenges and an absence of circumstances suggesting discrimination).
But we believe that to do so would be to operate outside the analytic framework established by the Supreme Court in Batson. The Equal Protection Clause proscribes only "purposeful" discrimination in the exercise of a peremptory challenge. Thus, the analysis adopted in Batson
contemplates an inquiry into the actual, rather than the supposed, intent of the strike's proponent by shifting the burden of production to the proponent to put forth a nondiscriminatory explanation for the strike. That explanation may then be subjected to a challenge by the strike's opponent on the ground that it is pretextual, and the credibility of the explanation must then be assessed by the trial court before it ultimately determines whether the strike was discriminatory. See Hardcastle v. Horn
(E.D.Pa. 2001), ___ F. Supp. ___ ("Given Batson's emphasis on the prosecutor's intent, reliance on apparent or potential reasons is objectively unreasonable because they do not shed any light on the prosecutor's intent or state of mind when making the challenge."); see, also, Mahaffey, supra at 483-484 (holding that, when the trial court had prevented the prosecutor from articulating his neutral reasons at trial, the state could not, on appeal, rely upon "apparent," as opposed to "actual," reasons for the strike in support of the trial court's denial of a Batson claim).
Having thus determined in this case that the appellant had established a prima facie case of purposeful discrimination by the prosecution in its exercise of its peremptory challenge to strike Wright from the jury, we hold that the trial court erred, as a matter of law, in failing to call upon the prosecution to provide a race-neutral explanation for the strike and to then determine whether the appellant had sustained his ultimate burden of proving discrimination. Accordingly, we remand this case to the common pleas court for the limited purpose of conducting a hearing on the appellant's Batson claim in accordance with the law and this Opinion. The trial court shall, within thirty days of this Opinion, by means of a supplemental record, transmit and certify to this court its findings and the record of the proceedings from which they derive.[2] Thereafter, a date will be set for reargument. See, e.g., Batson, supra at 100,106 S.Ct. at 1725 ("Because the trial court flatly rejected the objection [to the peremptory challenge] without requiring the prosecutor to give an explanation for his action," the Court "remand[ed] th[e] case for further proceedings," and ordered that the petitioner's conviction be reversed if the prosecutor failed to provide a race-neutral explanation); Jackson,supra (which was before this court following our remand to the trial court "for the limited purpose of permitting the trial court to conduct an evidentiary hearing to determine whether * * * the prosecution violated the standard set forth in Batson * * * in exercising its peremptory challenges"); see, also, Mahaffey, supra at 486 (in which the Seventh Circuit, upon its determination that the defendant had made a prima facie case, ordered that a writ of habeas corpus be issued unless the state trial court held a hearing in accordance with Batson).
Cause remanded with instructions.
Gorman, P.J., and Winkler, J., concur Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
[1] We recognize that the adoption of a de novo standard of review represents the minority position among the federal circuits. See Tolbertv. Page (C.A.9, 1999), 182 F.3d 677, 684-685 (and cases from the First, Third, Fourth, Fifth, Eighth and Eleventh Circuits cited therein, which hold that the question whether defendant has made a prima facie showing is essentially a factual one, and the trial court's determination is to be reviewed deferentially on appeal for clear error). But in State v.Jackson (Mar. 29, 1989), Hamilton App. Nos. C-840680 and C-880021, unreported, this court, while purporting to decline de novo review, nevertheless applied a legal-sufficiency standard to review the trial court's determination that the defendant had failed to establish a prima facie case. And we agree with the Seventh Circuit in Mahaffey that the policy-based analysis outlined by the United States Supreme Court inOrnelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657, compels the conclusion that an appellate court can perform its proper function of expounding the law and assuring the law's uniform application only by reviewing the trial court's prima facie decision de novo. See Ornelas,supra at 697-699, 116 S.Ct. at 1661-1663 (in which the Supreme Court rejected the clear-error standard and adopted the de novo standard to review Fourth Amendment probable-cause determinations, after examining its past practice, the need for appellate courts to ensure a unitary system of law, the fact that the legal principles at issue acquired their content only through their application to fact patterns, and the tendency of de novo review to unify precedent); Mahaffey, supra at 484 ("The question of whether an inference of discrimination may be drawn from a set of undisputed facts relating to the racial makeup of the jury venire and the prosecutor's exercise of peremptory challenges is, like the probable cause question before the Court in Ornelas, one over which the appellate courts should exercise a degree of control that a clear error standard would not afford. * * *. As in Ornelas, factual scenarios will recur in this context, and de novo review would allow for a measure of consistency in the treatment of similar factual settings, rather than permitting different trial judges to reach inconsistent conclusions about the prima facie case on the same or similar facts."); see, also,Tolbert, supra at 686 (in which McKeown, J., dissenting, proposed a two-tiered standard of review: "[W]hile giving deference to the trial court's factual findings concerning the elements of the prima facie case, [an appellate court] should review de novo whether the challenging party has raised a sufficient inference of discrimination to shift the burden of production").
[2] In State v. Brock (1996), 110 Ohio App.3d 656, 672-673,675 N.E.2d 18, 28, the Third Appellate District noted that, although the Supreme Court in Batson had expressly declined to formulate particular procedures to be followed when a prima facie case has been made but the prosecutor has failed to explain, Ohio courts have been guided by the Court's disposition in Batson. The Tenth Appellate District in State v.Tuck (1992), 80 Ohio App.3d 721, 725, 610 N.E.2d 591, 594, upon its determination that the defendant had made a prima facie case, reversed the judgment of conviction and remanded the case to the trial court for an inquiry into the prosecutor's reason for the strike, a determination of whether discrimination was proven, a new trial if discrimination was then proven, and reinstatement of the judgment of conviction, "subject to any appeal," if discrimination was not proven. Accord State v. Robertson
(1993), 90 Ohio App.3d 715, 630 N.E.2d 422. To avoid any uncertainty regarding the appellant's right to appellate review of the proceedings resulting in his conviction, we elect instead to follow the precedent set in Jackson, supra, and to remand this case only for diminution of the record of the proceedings over which we retain jurisdiction.