**Joe McCAIN, Petitioner–Appellant,**

v.

**Richard B. GRAMLEY, Warden, Pontiac Correctional Center, Respondent–Appellee.**

**No. 95–1066.**

United States Court of Appeals,
Seventh Circuit.

Argued June 3, 1996.

Decided Sept. 20, 1996.

CUMMINGS, Circuit Judge.

Petitioner Joe McCain is a black male who was convicted of murdering three police officers. He filed an application for a writ of habeas corpus alleging that the State of Illinois wrongfully used a peremptory challenge to exclude a black venireperson from his jury in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. The district court denied McCain's application on the ground that he had failed to prove that the peremptory challenge was racially motivated. We affirm.

## I.

We begin by noting the standard under which we must review McCain's habeas application. On April 24, 1996, the President signed the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214. Section 104 of that law amended 28 U.S.C. § 2254, the law under which McCain seeks federal relief. Prior to the amendment, federal courts disregarded state courts' legal conclusions and reached independent judgments on the issues presented to them. Section 104(2) of the 1996 Act added a new section[1] that dictates how federal courts are to treat the legal determinations of state courts:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

McCain directly appealed his conviction to the Appellate Court of Illinois, Fifth District. One of the issues on appeal was the *Batson*

Andrew C. Porter (argued), Jay Williams, Schiff, Hardin & Waite, Chicago, IL, for Petitioner–Appellant.

Kathy Shepard, Catherine Glenn (argued), Office of the Attorney General, Criminal Appeals Division, Springfield, IL, for Respondent–Appellee.

Before CUMMINGS, RIPPLE and EVANS, Circuit Judges.

---

1. The new section is Section 2254(d). The former Section 2254(d), dealing with State court factual findings, has been redesignated Section 2254(e).

claim asserted here. The court affirmed McCain's conviction, holding, *inter alia*, that he had failed to prove that the prosecutor had struck any venireperson with a racial motive, and thus that he had failed to prove a constitutional violation. *People v. McCain*, 139 Ill.2d 601, 159 Ill.Dec. 113, 575 N.E.2d 920. The Illinois Supreme Court denied McCain's petition for leave to appeal on June 5, 1991 (No. 71595). Thus our task is to determine whether the appellate court's conclusion on the *Batson* claim was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented." 110 Stat. 1219.[2] If the conclusion was neither, then McCain's habeas application must be denied.

## II.

▮ Allegations of racially-based peremptory challenges are evaluated under a three-step framework. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722–23. First, a defendant must establish a prima facie case of purposeful discrimination in the jury selection (Step 1). To meet this requirement, he must show that (a) he is a member of a cognizable racial group; (b) the prosecutor exercised peremptory challenges to remove members of that racial group from the venire panel; and (c) all the relevant circumstances raise an inference that the prosecutor exercised the challenges on account of race. *Id.* Relevant circumstances may include a pattern of strikes against members of the racial group, as well as the types of questions the prosecutor asks in his voir dire examination. *Id.* at 97, 106 S.Ct. at 1723. In addition, the defendant may rely on the fact that peremptory challenges "constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' " *Id.* at 96, 106 S.Ct. at 1723 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892–93, 97 L.Ed.

1244). Once the defendant establishes a prima facie case, the burden shifts to the State to come forward with a race-neutral explanation for challenging the jurors in question (Step 2). The explanation need not rise to the level justifying the use of a challenge for cause, but must be more than the mere assertion of a nondiscriminatory motive. *Batson*, 476 U.S. at 97–98, 106 S.Ct. at 1723–24. If this requirement is met, the court must then decide whether the strike opponent has proved purposeful discrimination (Step 3). *Id.* at 98, 106 S.Ct. at 1723–24.

During the jury selection process at McCain's trial, the Illinois prosecutor used a peremptory challenge to strike Louis Brooks, a black male venire member. McCain's counsel, Mr. Younge, objected to this challenge as a *Batson* violation. The following discussion took place between the court and counsel regarding McCain's allegation:

> Mr. Younge: Yes, your Honor, ... we believe that [striking Brooks was done] to diminish the amount of blacks on the jury.
>
> The Court: Mr. Mansfield, what do you believe *Batson* requires at this point?
>
> Mr. Mansfield: Judge, I'm not altogether that familiar with *Batson* and at what stage the State is required to respond [but] I don't think that Mr. Younge's showing so far is sufficient. I would point out in way of argument that there are three victims in this case, Captain Delaney is white, Mark Koelker is white, Joe Bates, however, is a young black male. I would also point out as I see the jury selected right now, we have nine men, three women, of which two of those members are black men. I struck [a second black venireperson] because he's obviously in my mind leaning one way or the other at this point. He could very well be leaning toward the State, on the other hand, he could be leaning toward the defendant. I think he's a juror that has some bias built in right now. I just don't know which way he's leaning. As to Mr. Brooks, he's mar-

---

**2.** The fact that the new law was enacted after McCain was convicted, and after he filed his habeas application, is of no importance. *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996). The 1996 Act does not "impair the rights a party possessed when he acted, increase a party's liability for

past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1487, 128 L.Ed.2d 229. Therefore, it governs our review of McCain's habeas application.

ginally employed. At least that's my reading of the court's printout, and it's troubling in some sense that he answered none of the questions. He knows no one, he's never been the victim of a crime, he's never been charged, and perhaps its reverse logic, but that troubles me in a sense. It shouldn't be this way. But, I find it hard to believe that anyone who lives in East St. Louis has not been the victim of a crime.

The Court: I believe that if the issue under *Batson* is raised that there is a systematic discriminatory exclusion of minorities, then the Court is to inquire the basis for the challenges. I do note that with regard to Michael Foster, one of the blacks that was challenged, ... he responded that he may have some bias or prejudice, but in following up on questions, he said "I can't forget what happened when he was assaulted, [but] I'll try to be fair," and I had him questioned as to whether or not that either State or defense might challenge for cause. No such challenge was made, and I did not believe that his answers were such that it was necessary for the Court to on its own challenge, but I don't find that the State was doing anything improper in exercising its challenge, because I also questioned ... where his bias or prejudice might lay.

With regard to Louis Brooks, ... he didn't respond to any questions, [but] nor did LaSalle Johnson or Roland Falconer who were accepted by both defendant and the State. And those last two mentioned individuals are black. I note also that in some cases, both State and defense accepted some people who answered no questions and the State exercised peremptory challenges. I don't find that there is systematic exclusions of blacks on what's been presented at this time.

As previously noted, the trial court found no *Batson* violation and the Appellate Court of Illinois affirmed. That court determined that it was unclear whether the trial court had found that McCain failed to establish a prima facie case of discrimination, or that he had done so but the prosecution had successfully rebutted it. Thus it examined the record to determine whether the trial judge could have reasonably found that McCain had established a prima facie case of discrimination, for if not, there was no reason to assess the sufficiency of the State's explanation. The court concluded that in light of the overall circumstances of the jury selection process and the trial, McCain had failed to establish such a prima facie case.

■ The circumstances of the selection process were as follows. The total venire panel consisted of twenty-four whites, six blacks, one Asian, and five individuals whose races are unknown. Four whites and one black were successfully challenged for cause. The prosecutor then used peremptory challenges against three whites and two blacks. McCain's sole argument for a prima facie case is that the number of strikes used on blacks (two strikes out of five total, or forty percent) represents a much higher proportion than that of blacks on the total venire (six blacks out of thirty-six total, or 16.66 percent). Therefore, he argues, the strike against Brooks was racially motivated. We find McCain's argument unpersuasive.

■ There is no legal principle that each party must use its peremptory strikes only in a manner that is proportionally equivalent to the racial consistency of the total venire panel. The only constitutional requirement is that parties not base their strikes upon racial characteristics. There is no question that in determining whether one party has improperly struck venirepersons based upon race, a pattern of strikes is relevant. See *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. However, the definition of a "pattern" does not *necessarily* correlate to the racial proportions of the venire panel. The venire panel is chosen at random; one panel may consist of ten percent of a racial group while the next may consist of seventy percent. Therefore, it is illogical to infer in every case a discriminatory intent from noting that the percentage of challenges used by one party against members of a racial group is either more or less than the percentage of that group's total percentage of the venire panel. A "pattern" is more likely demonstrated by the manner in which a party uses its strikes as compared to its total strikes or

to the total number of members of the racial group. Where a party uses a significant number of its total strikes on members of a certain racial group, see, *e.g.*, *United States v. Sowa*, 34 F.3d 447 (7th Cir.1994), one might infer that the party was concerned about the racial make-up of the jury and acted in a discriminatory fashion. And where there are only a few members of a racial group on the venire panel and one party strikes each one of them, a similar inference could be made. However, even if a "pattern" could be said to exist, that fact is not dispositive. Courts must look to the totality of the circumstances, including the final make-up of the jury and the questions asked by the party. See *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Splunge v. Clark*, 960 F.2d 705, 707 (7th Cir.1992) (where a prosecutor demanded certain responses only of black venirepersons).

In light of this discussion, there was no pattern of strikes in McCain's trial. The prosecutor used two of his five strikes on black venirepersons. While this represents a higher percentage than that of blacks on the venire panel, it is neither a significant number of the prosecutor's total strikes nor a significant number of the black venirepersons as a whole. Furthermore, the final jury consisted of ten whites and two blacks— which happens to be precisely the same racial proportion as the total venire panel. Thus there is no evidence from which to logically infer a discriminatory intent. The conclusion that McCain failed to prove intentional discrimination is neither contrary to, nor an unreasonable application of, clearly established Federal law. 110 Stat. 1219. Nor is it an unreasonable determination of the facts in light of the evidence presented. *Id.*

McCain argues that the Illinois courts' conclusion that he failed to establish a prima facie case was erroneous because the prima facie requirement was rendered moot once the prosecutor offered an explanation as to his strikes. In support, he cites *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395, where the Supreme Court stated:

Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.

500 U.S. at 359, 111 S.Ct. at 1866. We have followed a similar approach. *United States v. Cooper*, 19 F.3d 1154, 1160–1161 (7th Cir. 1994); see also *Johnson v. Love*, 40 F.3d 658, 665 (3d Cir.1994) (citing previous Third Circuit cases following the same approach). McCain's argument is mostly one of semantics, however, and has no effect on the outcome of his case. For even if we assume that a prosecutor's offer of an explanation moots the question of whether a prima facie case was initially established, a race-neutral explanation shifts the burden back to McCain to prove intentional discrimination. And, as we shall see, the explanation offered here was race-neutral.

■ In *Purkett v. Elem*, —— U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834, the respondent challenged a Missouri prosecutor's use of peremptory challenges to strike two black men from the jury panel. The prosecutor explained his strikes as follows:

I struck [juror] number twenty-two because of his long hair. He had long, curly hair. He had the longest hair of anybody on the panel by far. He appeared to not be a good juror for that fact, the fact that he had long hair hanging down shoulder length, curly, unkempt hair. Also, he had a mustache and a goatee type beard. Those are the only two people on the jury with facial hair.... And I don't like the way they looked, the way the hair is cut, both of them. And the mustaches and beards look suspicious to me.

—— U.S. at ——, 115 S.Ct. at 1770. The Court of Appeals for the Eighth Circuit granted the respondent's writ of habeas corpus because the prosecution had failed to provide a "plausible" basis for believing that "the person's ability to perform his or her duties as a juror will be affected." *Id.* at ——, 115 S.Ct. at 1771. The Supreme Court reversed:

The second step of [the *Batson*] process does not demand an explanation that is persuasive, or even plausible.... "[T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez,* 500 U.S. at 360, 111 S.Ct. at 1866.

\*    \*    \*    \*    \*    \*

[To require the explanation to be both race-neutral and plausible] violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

*Id.* The prosecutor here stated that he struck Brooks for two reasons: (1) he had been only marginally employed; and (2) he failed to respond to any questions during voir dire. There is nothing inherently discriminatory or facially invalid about either of these reasons; each would be equally applicable if the venireperson were white, Asian, black, or otherwise. Therefore, the explanation was sufficiently race-neutral to shift the burden of persuasion back to McCain.

■ The prosecutor also stated that he found it hard to believe that any resident of East St. Louis had neither been the victim of a crime nor had a family member who was the victim of a crime. McCain argues that this response made the prosecutor's entire explanation non-race-neutral. He contends that it is "widely known" that East St. Louis has an overwhelmingly black population, which makes residence in East St. Louis a race-specific characteristic. There are two problems with this argument. First, it ignores the *Purkett* "facial validity" approach. Residing in East St. Louis is simply not the equivalent of being black. One might infer that because the population of East St. Louis is largely black, one who resides there is *likely* to be so, but that is not sufficient to equate an East St. Louis residence with being black. Regardless, however, the argument fails even if we equate an East St. Louis residence with being black. The prosecutor did not challenge Brooks *because* he resided in East St. Louis, see *Williams v. Chrans,* 957 F.2d 487 (7th Cir.1992), he chal-

lenged Brooks because he thought Brooks might be lying. Whether the prosecutor's reasoning is plausible is not the proper focus in deciding whether the explanation is race-neutral. *Purkett,* —— U.S. at ——, 115 S.Ct. at 1771. Plausibility is to be taken into account at Step 3 of the *Batson* analysis— whether, in light of *all* the circumstances of the trial, the opponent of the strike has proved purposeful racial discrimination. That merely brings us back to the conclusion of the Illinois courts: That McCain failed to establish a prima facie case of intentional discrimination, much less proving that the prosecutor actually discriminated. In sum, the burden remained on McCain to prove racial discrimination, and he failed to do so.

McCain's final argument is that the trial court used the wrong legal standard in analyzing his *Batson* allegation. Specifically, he contends that the court improperly used the standard of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, which, prior to *Batson,* had been interpreted by lower courts to require defendants to prove a "repeated striking of blacks over a number of cases." See *Batson,* 476 U.S. at 92 n. 16, 106 S.Ct. at 1721 n. 16 (listing cases). The Supreme Court made clear in *Batson* that "repeated striking" in other cases was not required to prove a constitutional violation. *Id.* at 93–98, 106 S.Ct. at 1721–24. McCain argues that because the trial court here used the phrase "systematic exclusion" in its ruling, it applied the incorrect *Swain* standard and his conviction must therefore be reversed.

McCain reads too much into the court's use of that phrase. A reading of the entire transcript regarding the *Batson* allegation makes clear that the court's focus was solely upon the facts of McCain's trial. There is no indication that the court, or any of the parties, were in any way concerned with the prosecutor's use or non-use of peremptory strikes in other cases. Moreover, the court specifically cited *Batson* as the proper legal standard under which to analyze the situation—a strong indication that it was familiar with the case. The use of the phrase "systematic exclusion" was only in reference to the lack of a pattern of strikes in McCain's

case (a fact of high relevance), not to the lack of a pattern of strikes in other cases as well.

### III.

There is neither a statistical basis nor any inference from prosecutorial questioning to support McCain's claim that the prosecutor struck Brooks from the jury panel because of his race. Therefore, the denial of his application for a writ of habeas corpus is AF-FIRMED.