In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 06-4163

MICHAEL FRANKLIN,

*Petitioner-Appellant,*

*v.*

GREGORY SIMS, Warden,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 5780—**Milton I. Shadur**, *Judge.*

———————

ARGUED JULY 9, 2008—DECIDED AUGUST 14, 2008

———————

Before POSNER, SYKES, and TINDER, *Circuit Judges.*

SYKES, *Circuit Judge.* Michael Franklin, who is African-American, is serving a 23-year sentence in Illinois for armed robbery. He petitioned for a writ of habeas corpus, 28 U.S.C. § 2254, claiming that the prosecution violated his right to equal protection by exercising peremptory strikes against two of three African-American members of the first six-person panel of the jury venire. *See Batson v. Kentucky*, 476 U.S. 79 (1986). The district court denied his petition. We affirm.

### I. Background

In 2001 two men, both armed and masked, entered the King Food and Liquor Store in Chicago and stole $500-$600. Franklin was charged with the robbery and tried before a jury.

During jury selection, the State exercised peremptory strikes against jurors Margaret Cooley and Lance Tyson—two of the three African-American members of the first six-person panel of prospective jurors. Previous questioning had revealed that Cooley is a housekeeper who had never been accused of a crime nor been the victim of a crime. She did, however, disclose that she had relatives who had been raped and that her domestic partner had spent time in prison. Tyson is an attorney and has several friends who are civil-court judges. He disclosed that he had received a speeding ticket, but when the prosecutor confronted him with his court records, Tyson admitted that the ticket was for driving under the influence (DUI).

The State struck Cooley and Tyson and accepted the remaining four jurors in the six-person panel. Franklin then made a *Batson* motion. The judge denied the motion, finding that Franklin failed to make out a prima facie case of discrimination. The following is the entire argument on the motion:

> Def: Okay. All right, Judge.
>
> Initially what I do is state for the record my client is African-American and Miss Cooley and Mr. Tyson are African-American and we could state that there

don't appear to be any race neutral reasons for bumping those individuals. We request the State give reasons for bumping both of them.

Ct.: Well, that's not the standard.

Def.: Well, Judge, I'm establishing my prima facie case.

Ct.: How are you doing that?

Def.: There's nothing I've heard that gives any reason why these people would be bumped and [they're] African-American and my client is African-American.

Ct.: But again my understanding is there's got to be *a showing of systematic exclusion of*—well, I guess you are alleging African-Americans.

Def.: I've also got to make a record, Judge. If we get to the end of this three hours from now and I want to start referring to earlier people that were bumped.

Ct.: What I'm saying is these are [peremptory] challenges. You don't give reasons for [peremptory] challenges.

If your argument is that the State *has systematically excluded* African-Americans because of your client's race, you have to show me how that's done.

Isn't Ms. Minefe African-American?[1]

St.: She is.

---

[1] Minefe was the third African-American member of the first panel.

Def.: Again, Judge, they should indicate that for the [record]. What I'm saying is they bumped two people. The first two that are gone are African-American people. I'm stating that for the record.

Ct.: Okay. And you are making a *Batson* motion?

Def.: Okay.

Ct.: They don't give reasons until I say that *you have made a prima facie case of systematic exclusion.*

So the panel that they have tendered to you contains one African-American. The complaining witness in this case, what race is he?

St.: He is African-American as well as the witnesses.

Ct.: And all the witnesses?

St.: Well, the other witness is Arab-American.

Ct.: I'm going to deny your motion. Here is your panel.

(Emphasis added.) Franklin did not renew his objection at the conclusion of jury selection and did not object to the State's exercise of any other peremptory strikes. Ultimately, two members of the jury were African-American. Franklin was convicted and sentenced to 23 years' imprisonment.

Franklin appealed, and the Illinois Appellate Court affirmed his conviction over a dissent. The court first rejected Franklin's contention that the trial judge had denied his *Batson* motion pursuant to the standard articulated in *Swain v. Alabama*, 380 U.S. 202 (1965), which *Batson* had overruled. *Swain* required a defendant to "show the

prosecutor's systematic use of peremptory challenges [on the basis of race] over a period of time" to make out an equal protection violation. 380 U.S. at 227. The Illinois Appellate Court concluded that the voir dire transcript, read in its entirety, demonstrated that the judge was familiar with and applied the *Batson* standard.

The Illinois Appellate Court also rejected Franklin's attack on the trial judge's determination that he had not made out a prima facie case of discriminatory strikes under *Batson's* first step. The court explained *Batson*'s three-step process: the defendant must first establish a prima facie case that the strikes were racially motivated; the burden then shifts to the prosecutor to come forward with a race-neutral reason for the strikes; and finally, the trial judge assesses the credibility of the explanation and determines whether purposeful discrimination has been established. The court next applied a six-factor test from a 1996 state case, *People v. Williams,* 670 N.E.2d 638 (Ill. 1996), to conclude that Franklin had not made an adequate prima facie showing at step one. Specifically, the court noted that the victim and two of the three witnesses were also African-American (the third was Arab-American). This, the court said, undermined any inference of discrimination. The court then explained that the venire comprised thirty-six potential jurors, four of whom were African-American, and that the State's five other peremptory strikes had not been used against African-Americans. In the court's view, striking two of four African-American potential jurors did not amount to a pattern of discriminatory strikes, and using two of seven peremptory strikes against African-Americans was not a disproportionate use of strikes against African-Americans.

Next, the Illinois Appellate Court reasoned that the ultimate composition of the jury—16.7% African-American (two out of twelve)—did not raise an inference of discrimination because African-Americans had constituted only 11.2% of the venire. And finally, the court noted that both Cooley and Tyson had "raised some questions concerning their ability to serve on a jury." Specifically, the court observed that some of Cooley's family members had been crime victims and that Tyson was evasive about his DUI conviction.

Franklin then filed a pro se petition under 28 U.S.C. § 2254 renewing his *Batson* claim. The district court denied the petition, and this court granted a certificate of appealability.

## II. Discussion

This case turns largely on the highly deferential standard precribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(1), for evaluating state-court decisions. To prevail, Franklin must show that the adjudication of his claim by the Illinois courts resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1); *see Rice v. Collins*, 546 U.S. 333, 338 (2006). In other words, he must establish either that the Illinois court applied the wrong legal standard or that it applied the proper Supreme Court precedent in an "objectively unreasonable manner," *Brown v. Payton*, 544 U.S. 133, 141 (2005), issuing a decision that fell "well outside the boundaries of permissible differences of opinion." *See Hardaway*

*v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). We assess the decision of the last state court to rule on the merits of a prisoner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). Thus, Franklin cannot prevail unless the Illinois Appellate Court unreasonably applied precedent from the United States Supreme Court in upholding the trial judge's denial of Franklin's *Batson* motion.

Franklin's first argument is not his strongest. He argues that the Illinois Appellate Court's decision is contrary to clearly established law because it upheld the trial judge's use of the overruled *Swain* standard. Franklin contends that the trial judge's repeated references to Franklin's need to show "systematic exclusion" demonstrates that the trial judge erroneously used the standard in *Swain.*

*Batson* expressly overruled *Swain's* requirement that a defendant must prove a "repeated striking of African-Americans over a number of cases," clarifying that a defendant may make the prima facie showing "by relying solely on the facts concerning selection *in his case*." *Batson*, 476 U.S. at 92-98. In *McCain v. Gramley*, 96 F.3d 288, 293-94 (7th Cir. 1996), we rejected an argument similar to Franklin's—namely, that the judge's reference to "systematic exclusion" meant that he had necessarily used the *Swain* standard—when a full reading of the transcript demonstrated otherwise.

Franklin reads too much into the judge's references to "systematic exclusion." The transcript demonstrates that the judge used that phrase simply to mean a pattern of strikes against African-Americans *in Franklin's case*—which although not a necessary showing if other indicia of

discrimination are present, is relevant to step one of the *Batson* inquiry. *See Batson,* 476 U.S. at 97; *United States v. Stephens,* 421 F.3d 503, 512 (7th Cir. 2005); *Holloway v. Horn,* 355 F.3d 707, 722 (3d Cir. 2004). As the Illinois Appellate Court pointed out, all the questions the judge posed to defense counsel focused solely on the facts of Franklin's case. For example, the judge asked if there were any African-American jurors who had not been stricken and inquired about the races of the victim and the witnesses. Nothing in this exchange indicates that the judge was concerned with the State's use of peremptory challenges in other cases.

Franklin attempts to distinguish *McCain* by arguing that the trial judge in Franklin's case said nothing that demonstrated his familiarity with *Batson* whereas the judge in *McCain* cited *Batson*. *See McCain,* 96 F.3d at 293-94. Franklin is incorrect; the trial judge in Franklin's case also referred to *Batson* by name. The judge further demonstrated his familiarity with *Batson*'s burden-shifting formula when he explained to defense counsel that the prosecution need not provide an explanation for its strikes until the court determined that Franklin had made a prima facie showing of discriminatory use of peremptories.

Franklin's second argument presents a closer question. He argues that even if the trial judge applied *Batson* and not *Swain,* the appellate court's decision was unreasonable because the court erroneously concluded that the trial judge applied *Batson* properly. Franklin contends that in evaluating his prima facie showing at step one, both the

trial judge and the appellate court improperly considered whether he had *proved* discrimination—not whether he had *raised an inference* of discrimination as *Batson's* first step requires—and thereby compressed the three-part test into one, absolving the State of its duty to provide a race-neutral explanation for its strikes. In particular, Franklin points to the appellate court's discussion about potential reasons for the strikes, such as the fact that Cooley had family members who were crime victims and Tyson had been initially unwilling to disclose his DUI conviction. This aspect of the appellate court's opinion does give us pause.

About three months before the Illinois Appellate Court affirmed Franklin's conviction, the Supreme Court issued *Johnson v. California*, 545 U.S. 162 (2005), in which it emphasized that a defendant's burden at *Batson*'s first step is light; the defendant need merely present "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Id.* at 170. As we have explained, *Johnson* clarified that "the burden at the prima facie stage is low, requiring only circumstances raising a suspicion that discrimination occurred, even when those circumstances are insufficient to indicate that it is more likely than not that the challenges were used to discriminate." *Stephens*, 421 F.3d at 512; *see United States v. Abdush-Shakur*, 465 F.3d 458, 469 (10th Cir. 2006) (same).

In addition, *Johnson* limited the ability of appellate courts to consider, at the prima facie stage, the apparent reasons for the challenges discernible from the record. We have explained that after *Johnson*, "an inquiry into apparent

reasons [at the prima facie stage] is relevant only insofar as the strikes are so clearly attributable to that apparent, non-discriminatory reason that there is no longer any suspicion, or inference, of discrimination in those strikes." *Stephens,* 421 F.3d at 516; *accord Williams v. Runnels,* 432 F.3d 1102, 1108-09 (9th Cir. 2006) (likewise in light of *Johnson* limiting the inquiry into so-called "apparent" reasons for strikes at the prima facie stage); *see, e.g., Mahaffey v. Page,* 162 F.3d 481, 483 n.1 (7th Cir. 1998) (hypothesizing as an example that all the stricken panelists were lawyers). Thus, for example, we concluded in *Stephens* that the defendant had made out his prima facie case without reference to the government's post hoc reasons, which consisted of a combination of the stricken jurors' encounters with law enforcement officials, their criminal histories, and their litigation histories. *See Stephens,* 421 F.3d at 517-18.

Here, the State argues that the apparent reasons considered by the appellate court for striking Cooley and Tyson were fair game for consideration at the prima facie stage even after *Johnson.* But those potential reasons are of the same type as those at issue in *Stephens*, which this court refused to consider in light of *Johnson;* the Illinois Appellate Court should not have considered them in Franklin's case. Doing so risked collapsing all three of *Batson's* steps into the prima facie inquiry.

But this was a small part of the appellate court's analysis, and there is no evidence from the voir dire transcript that the trial judge himself improperly collapsed *Batson*'s three steps. In affirming the trial judge's deci-

sion, the Illinois Appellate Court primarily relied on the fact that the State struck only two out of four African-American jurors of the thirty-six-person venire; that it used only two of its seven peremptory strikes against African-Americans; that at 16%, African-Americans were over-represented on the jury given that they comprised 11% of the venire; and that the victim and two of the witnesses were also African-American. Factors such as these are widely recognized as appropriate and important con-siderations at *Batson's* first step, even after *Johnson*, for determining whether an inference of discrimination has been raised. *See Batson,* 476 U.S. at 97; *Stephens,* 421 F.3d at 512-15; *see also Boyd v. Newland,* 467 F.3d 1139, 1147 (9th Cir. 2006); *United States v. Ochoa-Vasquez,* 428 F.3d 1015, 1044-45 (11th Cir. 2005); *Holloway,* 355 F.3d at 723. And while the burden of raising an inference of discrimination at the prima facie step is low, the court's reference to these factors cannot be deemed *unreasonable*—as required by AEDPA. *Cf. Johnson,* 545 U.S. at 164 (prima facie case made where State used three of twelve peremptory strikes to remove 100% of African-American venire members); *Williams,* 432 F.3d at 1107-08 (prima facie showing made where State used three of first four challenges against African-Americans and there were only four African-Americans in forty-nine-person venire); *Stephens,* 421 F.3d at 513-15 (on direct appeal, prima facie case made where prosecutor used six of seven peremptory strikes against minorities); *Holloway,* 355 F.3d at 722 (prima facie showing made where State used eleven of twelve strikes against African-Americans).

Franklin argues that the Illinois Appellate Court should have focused on the fact that the State struck two of the

three African-American panelists on the first six-person panel because it was at that point that the trial judge denied Franklin's *Batson* motion. Franklin's point is well-taken, but we cannot conclude it was *unreasonable* for the court to examine the entirety of the jury-selection process. Franklin does not point to any case that parses out the inquiry as he suggests, and both *Johnson* and *Stephens* countenance the methodology used by the Illinois Appellate Court.[2] *Cf. Johnson,* 545 U.S. at 164; *Williams,* 432 F.3d at 1107-08; *Stephens,* 421 F.3d at 513-15; *Holloway,* 355 F.3d at 722.

For the foregoing reasons, the judgment is AFFIRMED.

---

[2] In addition, had Franklin renewed his *Batson* motion posttrial as he was in fact required to, *see People v. Enoch,* 522 N.E.2d 1124 (Ill. 1988), the trial judge could have—and presumably would have—analyzed these same figures. The appellate court agreed to review the claim despite what was technically a waiver on Franklin's part only because the claim was of "constitutional dimension."