In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3262

ALLEN J. BENNETT,

*Petitioner-Appellant*,

*v.*

DONALD GAETZ, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 1975—**George W. Lindberg**, *Judge.*

ARGUED OCTOBER 28, 2009—DECIDED JANUARY 21, 2010

Before RIPPLE, WILLIAMS, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* An Illinois jury convicted Allen
Bennett for possession of a stolen vehicle. In this habeas
corpus petition under 28 U.S.C. § 2254, Bennett, an African-
American, raises a claim under *Batson v. Kentucky*, 476
U.S. 79 (1986), of racial discrimination during the
selection of that jury.

At the beginning of jury selection for Bennett's trial,
the jury venire consisted of two fourteen-person panels,

which together had five African-Americans. When examining the first panel, the prosecution used two peremptory challenges to exclude two African-Americans. Bennett, who represented himself at trial, used peremptories against six members of this first panel, including a third African-American. When examining the second panel, the prosecution used two of its remaining five peremptories to exclude two white jurors. The trial court then dismissed a fourth African-American for cause based on his criminal history. That left one of the original five African-Americans on the venire as a prospective juror. This individual did not serve on Bennett's jury but was seated as an alternate.

At the end of jury selection, Bennett raised a *Batson* challenge based on the prosecution's use of peremptories against African-Americans. The trial court rejected the challenge, finding that Bennett failed to make out a prima facie case of racial discrimination under *Batson*. Because Bennett failed to establish his prima facie case, the trial court did not proceed to the next step under *Batson* to require the prosecution to offer race-neutral reasons for its peremptories.

The jury convicted Bennett of aggravated possession of a stolen motor vehicle and possession of a stolen motor vehicle, and Bennett was sentenced to fifteen years of imprisonment. Bennett appealed his conviction to the Illinois Appellate Court, which also rejected his *Batson* claim. In its order affirming the conviction, the court cited the *Batson* standard and then applied the seven-factor test established by the Illinois Supreme Court in *People v.*

*Williams*, 670 N.E.2d 638 (Ill. 1996), to determine whether Bennett had made out a prima facie case under *Batson*. The court acknowledged that the prosecution used two of its four peremptories, or 50%, to exclude African-Americans, which supported a prima facie case of discrimination. Against this factor, however, the court weighed several circumstances that negated an inference of racial discrimination. One African-American was excused by Bennett and another was excused for cause, lowering the total number of African-Americans available to sit on the jury to only three. The prosecution also used only four of its seven available peremptories, rather than exhausting its peremptories to exclude all African-Americans on the venire. The final, retained African-American served as an alternate juror.

The Illinois Appellate Court also noted that none of the prosecution's questions during voir dire suggested racial animus. Finally, the court reasoned that the two African-Americans excluded by the prosecution shared a common characteristic other than their race; unlike the jurors accepted by the prosecution, these jurors were crime victims.

The Illinois Supreme Court denied Bennett's petition for leave to appeal, and the Illinois courts denied his petition for post-conviction relief. Bennett then filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. In addition to his *Batson* claim, Bennett's petition asserted that the admission of "other crimes" evidence denied him a fair trial; that the state trial judge's appointment of trial

counsel violated Bennett's right to counsel; and that the indictment was duplicitous and void. On June 23, 2008, the district court denied Bennett's habeas petition, concluding that the Illinois Appellate Court did not unreasonably apply *Batson*. The court also concluded that Bennett's evidentiary claim was not cognizable in federal habeas proceedings and that Bennett had procedurally defaulted his right to counsel and indictment claims.

On July 3, 2008, the State filed a "motion to reconsider" under Fed. R. Civ. P. 59(e), in which the State argued that the district court erred in holding that Bennett's right to counsel and indictment claims were procedurally defaulted. The motion requested that the State be allowed to respond to those claims on the merits. On July 9, the court denied the State's motion on the ground that it did "not object to the result of the court's June 23, 2008 order denying Bennett's motion for a writ of habeas corpus," but rather "improperly [took] issue with the reasoning underlying the court's decision."

On July 21, Bennett filed his own motion for the court to reconsider its procedural default analysis or, alternatively, grant him leave to file a notice of appeal. The court denied Bennett's motion on July 24 and declined to issue a certificate of appealability ("COA"). Bennett followed up on August 4 with a "motion to file late notice of appeal," and this court subsequently issued a COA on Bennett's *Batson* claim. The COA also directed the parties to address whether Bennett's appeal was timely, and specifically, whether Bennett complied with Fed. R. App. P. 4(a)(1)(A) by filing a notice of appeal within thirty days of the district court's order.

We begin our analysis with the issue of whether Bennett's appeal was timely, a threshold question that goes to our appellate jurisdiction. Under Fed. R. App. P. 4(a)(1)(A), an appellant in a civil case must file his notice of appeal "within 30 days after the judgment or order appealed from is entered." Here, the district court entered its order denying Bennett's habeas petition on June 23, 2008, but Bennett didn't file his "motion to file late notice of appeal" until August 4 of that year. So in order to establish that his appeal is timely, Bennett must identify some earlier filing that served as a sufficient notice of appeal.

Fortunately, Bennett's July 21 motion, titled "Motion to Reconsider or in the Alternative Motion for Leave to File Notice of Appeal and Request for Leave to Appeal *in Forma Pauperis*," qualified as a timely notice of appeal. The final page of this motion contained a separately captioned "Notice of Appeal," in which Bennett requested the Seventh Circuit to review the district court's denial of his habeas petition. This request satisfied the requirements of a valid notice of appeal, which are (1) identification of the party taking the appeal; (2) designation of the judgment or order being appealed; and (3) identification of the court to which the appeal is taken. *Smith v. Grams*, 565 F.3d 1037, 1041 (7th Cir. 2009) (citing Fed. R. App. P. 3(c)(1)). The parties agree, as do we, that Bennett's July 21 motion was valid under these criteria, especially since this court construes a pro se litigant's filings liberally. *See id.* at 1041-42 (construing a pro se habeas petitioner's letter as a timely notice of appeal even though it incorrectly named the Supreme Court, rather than the Seventh Circuit, as the reviewing court).

The parties argue in the alternative that the State's July 3 motion to reconsider tolled Bennett's thirty-day window to appeal until July 9, when the district court denied the motion. Under this theory, Bennett's August 4 "motion to file late notice of appeal" was within thirty days of the district court's July 9 judgment and therefore timely. We need not address this argument in light of our conclusion that Bennett's earlier July 21 motion, which was unquestionably timely, served as a sufficient notice of appeal.

Turning to the merits of Bennett's habeas petition, our review is constrained by the highly deferential standard prescribed by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d)(1), for evaluating state-court decisions. We may grant habeas relief only if the Illinois courts' adjudication of Bennett's claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* A state court's decision is "unreasonable" within the meaning of § 2254(d)(1) only if it is "so erroneous as to be objectively unreasonable" and "well outside the boundaries of permissible differences of opinion." *Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009) (quotations omitted). Here, we must decide whether the Illinois Appellate Court unreasonably applied Supreme Court precedent in upholding the trial court's determination that Bennett failed to establish a prima facie case of racial discrimination under *Batson*. *See Franklin v. Sims*, 538 F.3d 661, 664 (7th Cir. 2008).

In *Batson,* the Supreme Court established a three-step framework for determining whether the prosecution violated the defendant's Equal Protection rights by exercising peremptory challenges in a racially discriminatory manner. First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 94. Second, if the defendant establishes a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible, race-neutral reasons for the peremptories. *Id.* Third, the trial court must evaluate the plausibility of the prosecution's reasons, in light of all of the surrounding circumstances, to decide whether the defendant has proved purposeful discrimination. *Id.* at 98; *see also Miller-El v. Dretke*, 545 U.S. 231, 251-52 (2005).

The focus of this case is *Batson*'s first step, requiring us to examine whether Bennett put forth enough evidence to establish a prima facie case of racial discrimination. The burden at this stage is light, and a defendant may establish a prima facie case by offering a wide variety of evidence that raises a mere inference of a discriminatory purpose. *Johnson v. California*, 545 U.S. 162, 169 (2005); *see also United States v. Stephens*, 421 F.3d 503, 512 (7th Cir. 2005) ("[T]he burden at the prima facie stage is low . . . ."). Still, though light, the prima facie burden is an essential part of the *Batson* framework, and trial courts may justifiably demand that defendants carry this burden before requiring prosecutors to engage in the difficult task of articulating their instinctive reasons for peremptorily striking a juror. *Cf. Miller-El*, 545 U.S. at 267-68 (Breyer, J., concurring).

We do not believe that the Illinois Appellate Court unreasonably determined that Bennett failed to make out his prima facie case. The only real evidence of discrimination that Bennett offers is that the prosecution used two of its four peremptories, or 50%, against African-Americans, who comprised just five of the twenty-eight venire members, or 18%. But it is difficult to draw significance from this disparity, given the relatively small numbers of African-American prospective jurors and peremptory challenges in this case. *Cf. id.* at 240-41 (characterizing the prosecution's use of peremptories to strike ten of eleven African-Americans as "remarkable"); *Johnson*, 545 U.S. at 164, 173 (finding a prima facie showing where the prosecution excluded all three eligible African-Americans); *Batson*, 476 U.S. at 83 (describing the prosecution's use of peremptories to exclude all four eligible African-Americans). Further, the treatment of the three African-Americans who were not excluded by the prosecution undercuts an inference of racial discrimination. Bennett peremptorily struck one of these prospective jurors, the parties agreed to remove the second for cause, and the third sat as an alternate juror.

The Illinois Appellate Court also appropriately considered the fact that the prosecution did not exhaust its seven available peremptories to exclude all African-American prospective jurors; rather, it used only four of those peremptories, two against African-Americans and two against whites. *See Franklin*, 538 F.3d at 666 (approving the Illinois Appellate Court's reliance on the prosecution's use of two of seven peremptories to strike only two of four African-Americans). And finally, as the

state court observed, the prosecution did not ask suspicious questions to the two excluded African-American jurors that would support an inference of racial discrimination. *Cf. Miller-El*, 545 U.S. at 255-63 (describing the prosecution's posing of questions to African-American venire members designed to elicit disqualifying answers). In the absence of more evidence of discriminatory purpose, we cannot say that the Illinois Appellate Court unreasonably concluded that Bennett failed to make out a prima facie case under *Batson.*

Of course, it would not have been unreasonable for the state court to reach the opposite conclusion. The prosecution did use a disproportionate percentage of its peremptories against African-Americans, and no African-American ultimately served on Bennett's twelve-person jury. It is also a little troubling that the Illinois Appellate Court seemingly attempted to find a common, non-racial trait among the excluded African-American jurors that might justify the prosecution's peremptories—namely, that these jurors were crime victims. In *Johnson*, the Supreme Court admonished that courts should not imagine plausible reasons for peremptories at the prima facie stage, "when a direct answer can be obtained by asking [the prosecutor] a simple question" at the second *Batson* stage. *Johnson*, 545 U.S. at 172. As we cautioned in *Franklin*, the Illinois Appellate Court's reliance on common juror characteristics that could explain the prosecution's peremptories "risked collapsing all three of *Batson*'s steps into the prima facie inquiry." *Franklin*, 538 F.3d at 666.

Also troubling is that, under the facts of this case, the jurors' experience with crime seems an implausible reason for the peremptories. Although the two African-Americans struck by the prosecution testified that they had been crime victims, so too did at least four non-African-Americans who ultimately served as jurors. Based on this side-by-side comparison between excluded and non-excluded jurors, the prosecution would have been hard-pressed to credibly assert the jurors' experience with crime as a race-neutral reason had the trial court proceeded to *Batson*'s second stage. *See Miller-El*, 545 U.S. at 241.

Importantly, though, the prosecution never tried to use the African-Americans jurors' experience with crime as a basis for excluding them, and the trial court didn't rely on this juror trait in concluding that Bennett failed to make out his prima facie case under *Batson*. So as in *Franklin*, we may discount the Illinois Appellate Court's erroneous reliance on this trait as a small part of the court's overall analysis. *Franklin*, 538 F.3d at 666. Because that analysis primarily relied on several appropriate factors weighing against an inference of racial discrimination, we cannot say that the state court's application of *Batson* was "unreasonable" within the meaning of 28 U.S.C. § 2254(d)(1). For that reason, we AFFIRM the district court's judgment denying Bennett's habeas petition.