In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3172

CHARMELL BROWN,

*Petitioner-Appellant,*

*v.*

ALEX JONES, Acting Warden,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 17-2212 — **Sue E. Myerscough**, *Judge.*

ARGUED SEPTEMBER 24, 2020 — DECIDED OCTOBER 21, 2020

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* When selecting jurors for Charmell Brown's murder trial in Illinois state court, the prosecution struck venireperson Devon Ware who had been to the crime scene. As it happens, Ware is also African American. In his petition for habeas relief now before us, Brown argues that the prosecution struck Ware on the basis of his race and that the Illinois Appellate Court unreasonably applied *Batson v.*

*Kentucky*, 476 U.S. 79 (1986), when holding otherwise in Brown's direct appeal.

The court made no such error. It correctly noted the prosecution's apparent reason for striking Ware—that he had been to the crime scene—and found no circumstances giving rise to an inference that the prosecution engaged in racial discrimination. We therefore affirm the district court's decision denying Brown's petition for a writ of habeas corpus.

## I. BACKGROUND

In 2008, a jury convicted Charmell Brown of three counts of first-degree murder and one count of aggravated battery with a firearm for shooting three people outside of the American Legion building in Champaign, Illinois. The court sentenced Brown to 90 years' imprisonment. Since his sentencing, Brown has filed two postconviction motions, a direct appeal, and the petition for federal habeas relief now before us. Brown's only remaining claim is that the Illinois Appellate Court unreasonably applied *Batson* when reviewing his claim that the prosecutor in his case struck potential juror Devon Ware because of Ware's race.

Ware was one of two African Americans in the sixty-person venire gathered for Brown's trial. The clerk called Ware as a potential juror in the first panel of four venirepersons. The court then asked the panel general questions regarding their fitness as jurors. One question inquired whether anyone was familiar with the American Legion where Brown's crime took place. Ware said yes, and the other three venirepersons said no. The court followed up and asked Ware if he had visited the Legion. Ware answered, "Been on the outside. Not inside." But he denied that his familiarity with the American

Legion would affect his service as a juror. The court then tendered questioning to the prosecutor, who immediately requested that Ware be excused. The court obliged.

Brown objected that Ware's excusal violated *Batson*. The court overruled the objection and found that Ware was "properly excused" because Brown failed to make "a prima facie case that a discriminatory practice was being conducted by the State." The court thus did not ask the prosecution to provide "a race neutral explanation" for its strike.

Brown raised this issue before the trial court again in his post-trial motions. Once more, the trial court denied the claim. The court explained that Ware, "unlike every other juror that was questioned," had been to the American Legion, and therefore Brown failed to establish a prima facie *Batson* case.

On direct appeal, Brown raised his *Batson* issue a third time, but the Illinois Appellate Court rejected it. The court noted the relevant factors for establishing a prima facie *Batson* case, considered the record pertaining to Brown's *voir dire* proceedings, and determined that the trial court did not clearly err in ruling that Brown failed to establish a prima facie case of racial discrimination in the jury selection process. To support this conclusion, the court explained that there was no evidence of a pattern of striking African Americans from the jury or of a disproportionate number of strikes used against African Americans and that the other factors "were unremarkable in the overall context of this case." The court further noted that Ware meaningfully distinguished himself from the other potential jurors by stating that he was familiar with the crime scene. Brown petitioned for leave to appeal the

court's decision, but the Illinois Supreme Court denied his request.

Brown then sought federal habeas relief. The district court denied Brown's habeas petition but granted a certificate of appealability on the *Batson* issue. The district court noted that the prosecutor struck one of two African-American venirepersons but held that Brown "must do more than point to the fact that the prosecutor exercised a peremptory strike on an African American venireperson to establish a prima facie case." Brown now appeals the district court's decision.

## II. ANALYSIS

Brown seeks habeas relief under 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Federal courts may only grant habeas relief under AEDPA if a state court's last reasoned opinion on a defendant's claim (1) was contrary to, or relied on an unreasonable application of, clearly established federal law or (2) rested on an unreasonable factual determination. 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision relies on an "unreasonable application of clearly established federal law" if it identifies the correct legal rule but applies the rule in an objectively unreasonable way. *Bynum v. Lemmon*, 560 F.3d 678, 683 (7th Cir. 2009). Regarding factual determinations, a petitioner "bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence,'" and "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (first quoting 28 U.S.C.

§ 2254(e)(1); and then quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

This standard "erects a formidable barrier to federal habeas relief." *Id.* at 19. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement." *Id.* at 19–20 (alterations in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

In this case, Brown contends that he is entitled to habeas relief because the Illinois Appellate Court unreasonably applied *Batson* and based its decision on unreasonable factual determinations. In response, the State argues that Brown's petition is untimely and meritless. We disagree with the State's timeliness argument but agree that Brown's petition is meritless.

*A. The State waived its timeliness argument.*

AEDPA imposes a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). But this limitations period is not jurisdictional. *See Wood v. Milyard*, 566 U.S. 463, 474 (2012). A state respondent may waive the defense by "expressing its clear and accurate understanding of [a] timeliness issue" yet "deliberately steer[ing] the District Court away from the question and towards the merits of [the] petition." *Id.* And a federal appellate "court is not at liberty … to bypass, override, or excuse a State's deliberate waiver of a limitations defense." *Id.* at 466. For example, in *Wood*, "the State twice informed the District Court that it 'w[ould] not challenge, but [is] not conceding' the timeliness of [the] petition." *Id.* at 474 (second alteration in original). The Supreme Court held that the court of appeals

was therefore required to reach the merits of the petition rather than decide the case on timeliness grounds. *Id.*

Much like the state respondent in *Wood*, the State in this case waived its statute of limitations defense. Initially, the State did file a motion to dismiss arguing that Brown's petition was untimely. But after the court set an evidentiary hearing on timeliness and appointed counsel to represent Brown, the State asked the court to set a briefing schedule on the merits of the petition instead. The State informed the court that "consideration of the merits and any procedural bars to the claims raised in the instant petition may be more efficient than continued litigation of [Brown's] equitable tolling argument."

This was textbook waiver. The state "express[ed] its clear and accurate understanding of [a] timeliness issue" yet "deliberately steered the District Court away from the question and towards the merits of [Brown's] petition." *Id*. And the district court acknowledged as much by deciding the merits of this case. We too will therefore consider the merits of Brown's petition.

*B. The Illinois Appellate Court reasonably applied* Batson.

"In *Batson*, the Supreme Court established a three-step framework for determining whether [a] prosecut[or] violated [a] defendant's Equal Protection rights by exercising peremptory challenges in a racially discriminatory manner." *Bennett v. Gaetz*, 592 F.3d 786, 791 (7th Cir. 2010).

> First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Second, if the defendant establishes a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" … . Third, the trial court must evaluate the plausibility of the prosecution's reasons, in light of all of

the surrounding circumstances, to decide whether the defendant
has proved purposeful discrimination.

*Id.* (citations omitted) (quoting *Batson*, 476 U.S. at 94, 98).

This case turns on *Batson*'s first step—the prima facie case. "[A] defendant may establish a prima facie case by offering a wide variety of evidence that raises a mere inference of a discriminatory purpose." *Id.* (citing *Johnson v. California*, 545 U.S. 162, 169 (2005); *United States v. Stephens*, 421 F.3d 503, 512 (7th Cir. 2005)). For example, a defendant may establish a prima facie *Batson* case by offering proof of a pattern of strikes against African Americans or showing that the prosecutor's questions and statements during *voir dire* support an inference of discrimination. *See Flowers v. Mississippi*, 139 S. Ct. 2228, 2246 (2019); *Batson*, 476 U.S. at 96–97.

"The burden at this stage is light." *Bennett*, 592 F.3d at 791. A challenger must only point to "circumstances raising a suspicion that discrimination occurred." *Franklin v. Sims*, 538 F.3d 661, 665 (7th Cir. 2008). Nevertheless, "the prima facie burden is an essential part of the *Batson* framework, and trial courts may justifiably demand that defendants carry this burden before requiring prosecutors to engage in the difficult task of articulating their instinctive reasons for peremptorily striking a juror." *Bennett*, 592 F.3d at 791 (7th Cir. 2010) (citing *Miller-El v. Drekte*, 545 U.S. 231, 267–68 (2005) (Breyer, J., concurring)).

In this case, the Illinois Appellate Court applied *Batson* correctly. To start, the court identified the wide swath of factors to consider in determining whether a defendant has made a prima facie *Batson* claim. Then the court found that, in Brown's case, there "was no evidence of any pattern of striking African-Americans from the jury, nor was there any

evidence of a disproportionate number of strikes used against African-Americans," and "[t]he facts pertaining to the other factors were unremarkable in the overall context of this case."

Brown takes issue with this analysis on three grounds, but none prevails. First, Brown argues that the Illinois Appellate Court failed to consider (1) that, because only two members of the venire were African American, striking Ware dramatically increased the chance that no African Americans would serve on Brown's jury and (2) that the prosecutor's decision not to question Ware before excusing him differed from the prosecutor's treatment of other venirepersons.

This argument is not persuasive because the Illinois Appellate Court did consider these circumstances and correctly noted that they "were unremarkable in the overall context of this case." Though striking Ware decreased the chance that African Americans would serve on Brown's jury, that merely highlighted a minor anomaly in the venire. It did not shed any light on the prosecutor's strike. Moreover, the prosecutor's decision to ask more questions of other jurors was unremarkable because Ware distinguished himself by stating that he had been to the crime scene.

Second, Brown argues that the Illinois Appellate Court improperly considered that Ware was familiar with the crime scene to explain the prosecution's strike. Courts considering *Batson* claims at the prima facie stage may consider "apparent" reasons for a strike. *See Stephens*, 421 F.3d at 515 ("[I]n considering 'all relevant circumstances,' courts may consider distinctions such as [a venireperson's] attorney status in determining whether the inference of discrimination is demonstrated."). This "normally works to the government's advantage, showing that a seemingly discriminatory pattern of

peremptories is readily explained by factors apparent in the record." *Id.* (citing *Mahaffey v. Page*, 162 F.3d 481, 483 n.1 (7th Cir. 1998); *Johnson v. Campbell*, 92 F.3d 951, 953 (9th Cir. 1996); *Capers v. Singletary*, 989 F.2d 442, 446 (11th Cir. 1993)). But the Supreme Court has made clear that the persuasiveness of a *Batson* challenge is to be determined at the third *Batson* stage, not the first, and has rejected efforts by courts to supply reasons for questionable strikes. *Miller-El*, 545 U.S. at 252. An inquiry into apparent reasons is thus "relevant only insofar as the strikes are so clearly attributable to that apparent, non-discriminatory reason that there is no longer any suspicion, or inference, of discrimination." *Franklin*, 538 F.3d at 665 (quoting *Stephens*, 421 F.3d at 516).

Here, the Illinois Appellate Court was not unreasonable in considering Ware's history with the crime scene as an apparent reason for his excusal—just the opposite. Ware's statement that he, unlike any other jurors,[1] had been to the crime scene was a highly relevant circumstance for the court to consider. And the prosecutor's strike was "clearly attributable" to that circumstance because the prosecutor used the strike immediately upon learning of it.

Third, Brown argues that the Illinois Appellate Court imposed too high of a burden at the prima facie stage. For the reasons already stated, this is incorrect. The court reasonably determined that the circumstances of Ware's excuse did not

---

[1] Brown notes that another juror, who was not stricken, stated that she knew the address of the American Legion. This comparator juror does not reveal anything about the strike used against Ware because she, unlike Ware, had not been to the scene of the crime.

"rais[e] a suspicion that discrimination occurred." *Id.* (quoting *Stephens*, 421 F.3d at 512).

In sum, we see nothing unreasonable—much less any error beyond the possibility for fairminded disagreement—in the Illinois Appellate Court's application of *Batson*. Brown is therefore not entitled to habeas relief on this ground.

*C. The Illinois Appellate Court's decision did not rest on any unreasonable factual determinations.*

Brown argues that the Illinois Appellate Court relied on the unreasonable factual determination that the prosecution *in fact* did not strike Ware because of his race. Brown leans heavily on the trial court's statement that Ware was "properly excused" and the Illinois Appellate Court's affirmance of that purported "finding."

There are several issues with this argument. First, the trial court made clear that Ware was "properly excused" because Brown did not establish a prima facie *Batson* case. The trial court never purported to determine any facts about his excuse. Second, the Illinois Appellate Court did not reiterate this "finding" when reviewing the trial court's decision. The Illinois Appellate Court made clear that it only held that the trial court did not err insofar as it found that Brown failed to establish a prima facie *Batson* case. For those reasons, the Illinois Appellate Court did not rely on the allegedly unreasonable "factual finding" that Brown complains of.

### III. CONCLUSION

We AFFIRM the decision of the district court.