**Adbihakim HASSAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–10–00067–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 28, 2011.

Alexander B. Wathen, Houston, for appellant.

Randy Zamora, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices FROST and CHRISTOPHER.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant Adbihakim Hassan appeals from the county criminal court at law's affirmance of his conviction of a misdemeanor traffic offense in municipal court. We reverse and remand.

### FACTUAL BACKGROUND

Appellant was charged with a misdemeanor offense of failing to stop at a clearly marked stop line while facing a red light. He pleaded "not guilty." At the jury trial in municipal court, Officer William Lindsey of the Houston Police Department testified that he saw appellant, who was driving a taxi cab, stopped at a red light intersection in Houston. Officer Lindsey described how appellant turned left from Westheimer onto Fountainview from the lane next to the left-turn lane while the traffic light for his lane remained

red. No officer directed appellant to make the turn, and no sign or other traffic indicator gave appellant authority to make the left turn. Sergeant Ed Brian Robinson, who was on patrol with Officer Lindsey and who issued the citation to appellant, confirmed this testimony.

The jury convicted appellant of the charged offense, and the court assessed a fine of $200. Appellant filed a motion for new trial, which was denied. He then appealed to the county criminal court at law.[1] The county criminal court at law affirmed the conviction.

In considering issues presented in appellant's brief in this court, we made a preliminary determination that appellant had made a *prima facie* showing of racial discrimination in the State's exercise of peremptory strikes in jury selection. We abated the case and ordered the municipal court to conduct a full *Batson* hearing. Following a hearing, the municipal court concluded that the State did not engage in purposeful racial discrimination and denied appellant's *Batson* motion. A record of the hearing and the municipal court's findings of fact and conclusions of law were filed with this court. This court reinstated the case, and we now consider the merits of the issues raised in appellant's brief.

## ISSUES PRESENTED

In this de novo appeal, our review is limited to those issues considered by the county criminal court at law. *See* Tex. Gov't Code Ann. § 30.00027(b)(1) (in an appeal from a municipal court of record, the record and briefs from the appeal to the county court constitute the record and briefs at the court of appeals). Appellant challenges the sufficiency of the evidence to support his conviction, the trial court's denials of his motion to quash the complaint, motion for deferred disposition, and denial of his *Batson* challenge as well as an evidentiary ruling on an officer's testimony.

## SUFFICIENCY OF THE EVIDENCE

■ Under his seventh issue, appellant asserts that the evidence is legally and factually insufficient to sustain the conviction. In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim. App.1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim.App.1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim.App.1997).

A majority of the judges of the Texas Court of Criminal Appeals have determined that "the *Jackson v. Virginia* [443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ] legal-sufficiency standard is the

---

1. *See* Tex. Gov't Code Ann. § 30.00014 (West 2004).

only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App.2010) (plurality op.) (Hervey, J., joined by Keller, P.J., Keasler, and Cochran, J.J.); *id.* at 912–15 (Cochran, J., concurring, joined by Womack, J.) (same conclusion as plurality). Therefore, in this case, we review the evidence under the *Jackson v. Virginia* standard as articulated in the preceding paragraph.

The specific statute appellant is alleged to have violated provides as follows:

> (d) An operator of a vehicle facing only a steady red signal shall stop at a clearly marked stop line. In the absence of a stop line, the operator shall stop before entering the crosswalk on the near side of the intersection. A vehicle that is not turning shall remain standing until an indication to proceed is shown. After stopping, standing until the intersection may be entered safely, and yielding right-of-way to pedestrians lawfully in an adjacent crosswalk and other traffic lawfully using the intersection, the operator may:
>
> > (1) turn right; or
> >
> > (2) turn left, if the intersecting streets are both one-way streets and a left turn is permissible.

TEX. TRANSP. CODE ANN. § 544.007(d) (West 2011).[2]

Officer Lindsey testified that the intersection where appellant was ticketed is located in "Houston, Harris County" and that Westheimer and Fountainview are not both one-way streets, at which a left turn on a red light would have been permitted.

He explained that at that intersection, Westheimer has four lanes and a single left-turn lane. Appellant's vehicle was not in the left-turn lane, but in the lane next to it, designated as the "No. 1 lane." According to Officer Lindsey, the light in the left-turn lane changed to a green arrow, and appellant turned left. The light for appellant's lane remained red. Appellant was stopped at the red light in a lane designated for traffic proceeding straight. Officer Lindsey testified that he could see clearly that the light was red and that appellant turned left from this lane, which was next to the left-turn lane. Appellant then proceeded southbound on Fountainview. Officer Lindsey testified that no officer had directed appellant to turn, and there was no other sign, device, or indicator giving appellant the authority to turn left from the lane his vehicle occupied. Based on his observations over a period of "quite some time," Officer Lindsey believed the light was working properly. Sergeant Robinson confirmed that appellant was facing a red light westbound on Westheimer when appellant turned left onto Fountainview. Sergeant Robinson testified that the light was "cycling properly," and he had seen it functioning several times while on patrol that night. This evidence is sufficient to support appellant's conviction. Appellant's seventh issue is overruled.

## DENIAL OF MOTION TO QUASH

 In his first and second issues, appellant asserts that the municipal court improperly denied his motion to quash the complaint. Appellant argues that the jurat in the complaint's oath is fundamentally defective because it bears a date shown as "7–25–05," using an abbreviated two-digit year instead of using four digits.

---

2. In appellant's brief, he erroneously describes the offense as "failure to yield right-of-way entering a private drive." In his suffi- ciency argument, however, he discusses the correct offense.

■ We review the decision on a motion to quash under an abuse-of-discretion standard. *See Thomas v. State,* 621 S.W.2d 158, 163 (Tex.Crim.App.1981); *State v. Goldsberry,* 14 S.W.3d 770, 772 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). A trial court abuses its discretion if it acts without reference to guiding rules and principles, or acts arbitrarily or unreasonably. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App.1990) (op. on reh'g).

■ A complaint is a sworn allegation charging the accused with the commission of an offense in justice and municipal courts. TEX.CODE CRIM. PROC. ANN. art. 45.018(a) (West 2006). A complaint is sufficient if it shows that the accused has committed an offense against the law of the state. *Id.* art. 45.019(a)(4) (West 2006). A motion to quash should be granted only when the language concerning the defendant's alleged conduct is so vague or indefinite as to deny him effective notice of the acts he allegedly committed. *De-Vaughn v. State,* 749 S.W.2d 62, 67 (Tex. Crim.App.1988).

■ The particularity in pleading required for an indictment or an information is not required for a complaint, and a complaint will not be dismissed due to a mere informality. *Kindley v. State,* 879 S.W.2d 261, 263 (Tex.App.-Houston [14th

Dist.] 1994, no pet.). The complaint in this case substantially complies with the requirements of the Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 45.019(a).[3] Subsection (e)(2) to article 45.019 provides that a complaint in municipal court may be sworn to before "the clerk of the court or a deputy clerk." *Id.* art. 45.019(e)(2). This complaint was sworn to by the "deputy Clerk Municipal Court, Houston, Texas" on "7-25-05." Well-defined and well-understood abbreviations may be used in an indictment, jurat, or complaint without rendering the instrument defective. *Andrade v. State,* 662 S.W.2d 446, 448–49 (Tex.App.-Corpus Christi 1983, pet. ref'd) (holding complaint's jurat containing commonly abbreviated date was adequate). We conclude that the jurat in this case is sufficient. The trial court did not abuse its discretion in denying appellant's motion to quash the complaint. We overrule appellant's first and second issues.

### JURY SELECTION

In his fourth and fifth issues, appellant asserts that the trial court erred in denying his challenge to the State's peremptory strikes of three venire members. Under *Batson v. Kentucky,* a party may not exercise peremptory strikes during jury selection to exclude a potential juror solely on

---

**3.** A complaint is sufficient, without regard to its form, if it substantially satisfies the following requisites:
 (1) it must be in writing;
 (2) it must commence "In the name and by the authority of the State of Texas";
 (3) it must state the name of the accused, if known, or if unknown, must include a reasonably definite description of the accused;
 (4) it must show that the accused has committed an offense against the law of this state, or state that the affiant has good reason to believe and does believe that the accused has committed an offense against the law of this state;

 (5) it must state the date the offense was committed as definitely as the affiant is able to provide;
 (6) it must bear the signature of mark of the affiant; and
 (7) it must conclude with the words "Against the peace and dignity of the State" and, if the offense charged is an offense only under a municipal ordinance, it may also conclude with the words "Contrary to the said ordinance."
*Id.* art. 45.019(a).

the basis of race. 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986). A defendant objecting that the State has violated *Batson* must make a *prima facie* showing of racial discrimination in the State's exercise of its peremptory strikes. *See Herron v. State,* 86 S.W.3d 621, 630 (Tex.Crim.App.2002). If the defendant makes a *prima facie* showing, a presumption arises that the peremptory challenges were used to discriminate on a racial basis, and the burden then shifts to the State to come forward with race-neutral explanations for the strikes. *Id.*

To establish a *prima facie* case under *Batson,* a defendant must show (1) that the State exercised its strikes to exclude members of a cognizable racial group from the venire, and (2) that this fact along with any other relevant facts and circumstances raise an inference that the State exercised these strikes against the venire members because of their race. *See Batson,* 476 U.S. at 96, 106 S.Ct. 1712. The defendant need not share the stricken venire members' race. *See Powers v. Ohio,* 499 U.S. 400, 405–16, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Undisputed observations and uncontradicted statements of trial counsel can provide support in the record for a *prima facie* showing. *See Yarborough v. State,* 947 S.W.2d 892, 895 (Tex.Crim.App. 1997); *Emerson v. State,* 820 S.W.2d 802, 804 (Tex.Crim.App.1991); *Greer v. State,* 310 S.W.3d 11, 14 (Tex.App.-Dallas 2009, no pet.). In determining whether a *prima facie* case is reflected in the record, courts should not resolve the question of deliberate racial discrimination on the merits by assessing the probative weight of competing inferences or conflicting evidence but are simply to decide whether the issue has been raised. *Linscomb v. State,* 829 S.W.2d 164, 167 (Tex.Crim.App.1992). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Id.* (quoting *Tex. Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

During the hearing of appellant's *Batson* motion, the trial court permitted appellant to state for the record that venire members 2, 3, 6, 8, and 11 appeared to be African American; venire members 5 and 7 appeared to be Asian; venire members 1, 10, 12, and 13 appeared to be Hispanic; and venire members 4, 9, and 14 appeared to be Caucasian. According to the record, the trial court agreed with these statements. The State did not object to appellant's references to the venire members' races. Appellant also stated without objection that the State exercised strikes against two of the five African American venire members, numbers 2 and 8. The record reflects that the State exercised a strike against one of the Asian venire members, number 5. The record also reflects that appellant exercised a strike against venire member 5. Hence, the record supports appellant's contention that the State used peremptory strikes on two of the five African American venire members; likewise, of the two Asian venire members, the State and appellant both exercised strikes against the same one.[4]

A pattern of exercising strikes against venire members of a particular race may establish a *prima facie* case. *See Keeton v. State,* 749 S.W.2d 861, 867 (Tex.Crim.App.1988). "[T]he bare fact of strikes exercised against persons of a certain race does not necessarily reveal the work of a racially prejudiced mind." *Linscomb,* 829 S.W.2d at 166. "What may be revealing, however, is a repetition of such

---

4. We presume, without deciding, that appellant may raise a *Batson* challenge to the striking of venire member 5 even though appellant exercised a peremptory strike on that member of the venire.

strikes in suspiciously large numbers— numbers larger than one would expect if race had nothing to do with it." *Id.* In *Linscomb,* nineteen percent of the venire members who could be effectively stricken were African American, and the State used forty percent of its peremptory strikes to remove four of the six African American venire members. *Id.* at 165. The Court of Criminal Appeals concluded, "[T]he prosecutor exercised peremptory challenges against [African American] venire-members at more than twice the rate one would expect from a random selection. Because she was not made to reveal her actual motives, we have no reason to suppose that this disproportionately large number was merely coincidental." *Id.* at 166.

We acknowledge this case differs from *Linscomb* because the venire was smaller and the State had fewer peremptory strikes. Nevertheless, under these facts, appellant met his minimal burden to raise an inference of discrimination in jury selection. African Americans comprised five of the fourteen venire members (thirty-six percent), but the State used two of its three strikes (sixty-six percent) to remove two African American members. Of the two Asian venire members on the panel (fourteen percent), the State used its last strike to remove one Asian venire member, the same one against whom appellant exercised a strike.

In support of his *prima facie* showing, appellant noted that venire member 5 was an accountant and, when asked during voir dire to offer her opinion of defense attorneys, she ranked defense attorneys as a "5" on a scale of 1–10. According to appellant, these facts tended to make panel member 5 a more favorable juror for the State and, therefore, an unlikely strike by the State. Appellant also noted that panel member 2 ranked his opinion of police officers as an "8" on a scale of 1–10. Appellant urged that, given panel member 2's very high opinion of police, he was an unlikely strike for the State. Finally, appellant indicated that panel member 8 was a technological professional, who seemed to be an unlikely strike for the State.

Based upon the foregoing analysis, we concluded in a prior abatement order that appellant made a *prima facie* showing of racial discrimination. *See id.* (explaining that the minimum evidence necessary to establish a *prima facie* case "is any relevant evidence with more than a modicum of probative value"); *Flores v. State,* 33 S.W.3d 907, 925 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) ("The burden [to make a *prima facie* case] is not onerous; only minimal evidence is needed to support a rational inference."); *see also Marx v. State,* 953 S.W.2d 321, 332 (Tex.App.-Austin 1997) (abating case for *Batson* hearing where State used two of its six peremptory strikes to exclude two of the three African American members on a twenty-eight person venire), *aff'd* 987 S.W.2d 577 (1999). We ordered this case abated and instructed the municipal court to conduct a hearing and make the determinations prescribed by *Batson.* *See Hutchinson v. State,* 86 S.W.3d 636, 638–39 (Tex.Crim. App.2002) ("[W]e have long abated appeals and remanded cases to the trial court to conduct a *Batson* hearing when the trial court had erroneously denied such a hearing after the requisite *prima facie* showing had been made."). After doing so, the municipal court concluded that the State did not engage in purposeful racial discrimination by striking two of the five African American venire members and by striking one of two Asian venire members. We now review the municipal court's ruling.

If an accused makes a *prima facie* showing, a presumption arises that

the peremptory challenges were used to discriminate on a racial basis, and the burden then shifts to the State to come forward with race-neutral explanations for the strikes. *See Herron,* 86 S.W.3d at 630. A race-neutral explanation is based on something other than the race of a potential juror. *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Once the State has articulated a race-neutral explanation, the burden shifts back to the accused to show that the State's explanations are actually a pretext for discrimination. *See id.* The trial court then must determine whether the accused carried the burden of proving discrimination. *See Herron,* 86 S.W.3d at 630. Because the trial court's decision often turns on an evaluation of credibility, we give the trial court's decision great deference and will not overturn it on appeal unless it is clearly erroneous. *Id.* We review the record of the *Batson* hearing and the voir dire examination in the light most favorable to the trial court's ruling. *Young v. State,* 283 S.W.3d 854, 866 (Tex.Crim.App.2009).

At the recent *Batson* hearing, held more than five years after the trial, the prosecutor testified that he exercised a strike on venire member 5, who is Asian, because she was a certified public accountant (CPA). The prosecutor stated that he never seats a person who works as a CPA on any jury. In his view, CPAs tend to overanalyze cases. In this case, venire member 5 was the only potential juror who worked as a CPA. Therefore, the prosecutor offered a race-neutral reason for striking one of the two Asian venire members. *See Moore v. State,* 265 S.W.3d 73, 84 (Tex.App.-Houston [1st Dist.] 2008, pet. dism'd).

▮ The prosecutor also testified at the *Batson* hearing that, in examining the 2005 trial record, he could not recall why he struck venire member 2 and venire member 8. The prosecutor explained that he could have exercised a strike against any venire members if he was not satisfied with the way they reacted to his voir-dire questions, humor, or joking, or if they did not maintain eye contact. On cross-examination, the prosecutor candidly stated that he could not recall whether venire member 2 or venire member 8, in particular, reacted in any specific way to his line of questioning. In response to cross-examination questions, the prosecutor likewise could not recall anything specific about these particular venire members, though he added, "I can tell you without a doubt that I never struck a [potential] juror for an improper reason including race or sex. While I cannot sit here and tell you today why they were struck, I can tell you with certainty they were not struck for any improper reason." A prosecutor may not rebut the presumption merely by denying that he had a discriminatory motive or by "affirming his good faith in individual selections." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723–24; *see Brooks v. State,* 802 S.W.2d 692, 694–95 (Tex.Crim.App.1999). In the absence of a specific recollection and explanation, a prosecutor's good faith belief that he acted in accordance with his general practices and in a race-neutral way is not sufficient to meet the State's burden. *See Brooks,* 802 S.W.2d at 694–95.

▮ In proffering an explanation to rebut the presumption, it was incumbent upon the prosecutor to articulate a clear, specific, and legitimate explanation for the challenge of each African American venire member on whom the State exercised a peremptory strike. *Id.* Moreover, the record must expressly and affirmatively reflect the non-discriminatory explanation. *Id.* Though it is understandable, given the passage of time, that the prosecutor would not have a specific recollection, the inescapable conclusion is that the State has

failed to demonstrate that its exercise of peremptory strikes against venire members 2 and 8 was based on permissible race-neutral justifications. *See id.* (involving a prosecutor who was unable to proffer any reason for striking two African American venire members). Because the prosecutor could not recall why peremptory strikes were used on these two venire members and offered no explanation relevant to this particular case, the State did not meet its burden of producing a specific race-neutral explanation for the strikes. *See id.*

If a trial court erroneously concludes that a defendant has not made a *prima facie* showing of racial discrimination in the State's exercise of peremptory strikes, the appellate court might not order a full *Batson* hearing until years after the trial, as occurred in the case under review. In these circumstances, the State's files might not reflect the reasons for the peremptory strikes, and the State might not be able to articulate a specific race-neutral explanation either because the prosecutor is unavailable or because the prosecutor does not remember the reasons for the strikes. *See id.* Under these circumstances, the State has failed to meet its burden under *Batson,* requiring the appellate court to reverse the conviction and remand for a new trial, even though the prosecutor, in fact, may not have exercised the State's peremptory strikes in a racially discriminatory manner. *See id.* Accordingly, it would be prudent for a trial court to allow a full *Batson* hearing if there is any substantial argument as to whether the defendant made a *prima facie* showing of racial discrimination in the State's exercise of peremptory strikes. By proceeding in this fashion, the court could create a record

while memories are fresh and thereby avoid a potential reversal and retrial based upon a failure of memory that likely would occur if the trial court erroneously concludes that a defendant has not made a *prima facie* showing of racial discrimination.

Because the State failed to demonstrate a clear and reasonably specific, legitimate race-neutral reason for its peremptory strikes of the specified two African American venire members, the trial court's determination was clearly erroneous as to these two peremptory strikes. *See id.* Accordingly, appellant's challenge to the court's *Batson* ruling is sustained.[5] The judgment of the county criminal court at law is reversed, and this case is remanded to the municipal court for a new trial.

---

5. Inasmuch as this court's ruling on the *Batson* challenge is dispositive, we need not reach appellant's third or sixth issues, the sustaining of which would offer no greater relief.