

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

## NO. PD-1682-11

---

### ADBIHAKIM HASSAN, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTEENTH COURT OF APPEALS HARRIS COUNTY

---

**KELLER, P.J., delivered the opinion of the unanimous Court.**

The State used its only three peremptory challenges to strike two African-Americans and an Asian in a fourteen-person venire that was made up predominantly of racial minorities. The court of appeals held that appellant had established a *prima facie* case of racial discrimination under *Batson v. Kentucky*.[1] We disagree and reverse.

---

[1] 476 U.S. 79 (1986).

# I. BACKGROUND

## A. Trial

Appellant was tried for a misdemeanor traffic offense before a six-person jury.[2] At jury selection, the State and appellant were each allocated three peremptory strikes.[3] The venire consisted of fourteen people: five African-Americans, two Asians, three Caucasians,[4] and four Hispanics. The State struck two African-Americans (Ms. Thomas and Mr. Phillips) and one Asian (Ms. Lee).[5] The resulting six-person jury consisted of two African-Americans, one Asian, two Hispanics, and one Caucasian.[6]

Defense counsel objected that the State's strikes were racially motivated in violation of *Batson v. Kentucky*. Defense counsel contended that Lee was an unlikely strike for the State because she was an accountant and had a low opinion of defense attorneys (five on a scale of one to ten).[7] The defense further contended that Thomas was an unlikely strike for the State because she had a high opinion of police officers (eight on a scale of one to ten)[8] and Phillips was an unlikely strike

---

[2] *See* TEX. CODE CRIM. PROC. art. 33.01 (jury composed of six persons in misdemeanor cases).

[3] *See id.*, art. 35.15(c) (three strikes for misdemeanor cases tried in county court).

[4] One of the Caucasians, Ms. Segura, had a Hispanic surname.

[5] Defense counsel also struck Lee.

[6] It appears that two Hispanic venire members were excused for cause or by the court, so all remaining venire members were within the strike zone.

[7] The record supports defense counsel's description of Lee's occupation and her rating of defense attorneys.

[8] The record appears to contradict defense counsel's contention that Thomas rated police officers as an "eight." The reporter's record notes that there was no response from the first and third rows of venire members when asked whether anyone would rate police officers as an "eight." As

for the State because he was "some sort of technological professional."[9]  The defense then asked to call the prosecutor to testify as to the reasons for the strikes.  The municipal-court judge denied that request and overruled the *Batson* objection.  Defense counsel asked to make an offer of proof, but the municipal-court judge responded, "No.  You can do it after the trial."  As far as the record shows, no post-trial, pre-judgment hearing was conducted.

Appellant was convicted.  He filed a motion for new trial, which included a *Batson* allegation, but that motion was denied.  In the motion, appellant faulted the State for striking two African-American venire members when there were only five on the panel.  He also claimed that the strike of Thomas could not be justified because "[m]ost of the jurors in the panel rated police less than 8 on a 1-10 scale including many non-black jurors that the State did not strike."  There was no hearing on the motion for new trial.

## B. Appeal

Because this was a traffic case tried in municipal court, appeal was initially to a county court at law.  In addition to the allegations made at trial in connection with his *Batson* objection, appellant pointed out that the State did not strike a Caucasian juror who felt that he had unjustly received a

---

venire member two, Thomas was presumably sitting on the first row.  Regardless, the only venire member identified in the record as rating police officers as an "eight" was venire member Perkins, on the second row.  Perkins was African-American.  The State did not strike her, but she was struck by defense counsel.  In his brief, defense counsel also says that venire member three—*Mr. Thomas*—rated police officers an eight.  Not only is this statement unsupported by the record, but defense counsel made no statement to this effect to the trial judge during his *Batson* objection.

The record also indicates that two unidentified female jurors "at the end of the second row" rated prosecutors as an "eight."

[9]  Phillips stated that he was an electronic digital technician.

ticket.[10]   The county court at law held that appellant failed to establish a *prima facie* case under *Batson*, so the municipal court did not err in overruling his objection and in refusing to hold a *Batson* hearing.[11]   Appellant then appealed to the court of appeals.

The court of appeals concluded that appellant had demonstrated a *prima facie* case of discrimination under *Batson*.[12]   In arriving at this conclusion, the court of appeals focused on the percentage of strikes used against African-Americans and Asians versus the percentage of such persons on the panel:

> African Americans comprised five of the fourteen venire members (thirty-six percent), but the State used two of its three strikes (sixty-six percent) to remove two African American members.  Of the two Asian venire members on the panel (fourteen percent), the State used its last strike to remove one Asian venire member, the same one against whom appellant exercised a strike.[13]

The court of appeals also recited appellant's arguments that the three venire members that were

---

[10]   The record shows that venire member Schwartz responded that he received a speeding ticket that he did not deserve.

The record also shows that when asked whether he would assume that someone who received a traffic ticket could have taken defensive driving, Schwartz answered affirmatively.  When asked whether this assumption would affect his ability to be an impartial juror, Schwartz replied, "Yeah. I mean, I have some question in this offense why someone would spend the time and energy and money to defend themselves against a red light."  When asked whether he might hold against the defendant "that you don't know why this case is going to trial and we can't tell you," Schwartz replied, "Maybe."

Schwartz also raised his hand when asked whether anyone would rate defense attorneys a "five."

Defense counsel later challenged Schwartz for cause, but that challenge was overruled.

[11]   *Hassan v. State*, No. 5473, slip order 3-7 (County Court at Law No. 14 January 4, 2010).

[12]   *See Hassan v. State*, 346 S.W.3d 234, 240 (Tex. App.–Houston [14th Dist.] 2011).

[13]   *See id.*

struck were unlikely strikes for the State, but the court did not say whether those arguments influenced its holding.[14]

Having found that appellant had demonstrated a *prima facie* case, the court of appeals abated the appeal and remanded the case to the municipal court for a retrospective *Batson* hearing.[15] At the hearing, the prosecutor testified to striking Lee because she was a CPA[16] and CPAs tend to overanalyze cases. The prosecutor could not remember why Thomas and Phillips were struck, but the prosecutor maintained that he never strikes a juror "for an improper reason including race and sex." The municipal court judge concluded that the State had not engaged in purposeful discrimination in exercising its strikes.

After receiving the case back from abatement, the court of appeals concluded that the State had failed to articulate clear and reasonably specific race-neutral reasons for striking the two African-American venire members.[17] Consequently, the court of appeals reversed the decision of the county court at law and remanded the case to the municipal court for a new trial.[18]

We granted the State's petition for discretionary review to determine whether the court of appeals was correct in holding that appellant had established a *prima facie* case of discrimination.[19]

---

[14]  *See id.*

[15]  *See id.*

[16]  Certified Public Accountant.

[17]  *Id.* at 242.

[18]  *Id.*

[19]  The State's ground for review was as follows: "Is using two out of three peremptory strikes against two of five members of a group in a strike zone of twelve a 'suspiciously large' repetition of strikes or an 'unexpectedly high' rate of challenges sufficient to establish a presumption

We also granted review on our own motion to determine whether the court of appeals erred "to find that appellant met his burden of proving purposeful discrimination in the prosecutor's use of peremptory strikes."

## II. ANALYSIS

It is unconstitutional to strike a person from a jury because of race.[20]  In *Batson*, the Supreme Court set forth a three-part process for determining whether a peremptory strike has been exercised with improper discriminatory intent: (1) the party opposing the strike must establish a *prima facie* case of purposeful discrimination, (2) if that occurs, the party making the strike must offer a race-neutral explanation for the strike, and (3) the trial court must then determine whether the party opposing the strike has established purposeful discrimination.[21]

In deciding whether a *prima facie* case has been established, "the trial court should consider all relevant circumstances."[22]  These include, but are not limited to, looking at the number of strikes to determine whether there is a pattern of strikes against venire members of a certain race and examining the striking party's questions and statements during *voir dire*.[23]  At the *prima facie* case step in the process, the circumstances need only give rise to an inference of discrimination; proof of

of purposeful discrimination?"

[20]  *Batson*, 476 U.S. at 97-98.

[21]  *Id.* at 96-98; *Johnson v. California*, 545 U.S. 162, 168 (2005).

[22]  *Batson*, 476 U.S. at 96.  *See also Miller-El v. Dretke*, 545 U.S. 231, 239 (2005) ("a defendant could make out a prima facie case of discriminatory jury selection by 'the totality of the relevant facts' about a prosecutor's conduct during the defendant's own trial").

[23]  *Batson*, 476 U.S. at 97.

discriminatory intent by a preponderance of the evidence is not required.[24] Part of making a *prima facie* case based upon race is to demonstrate that the venire members who were struck are part of a cognizable racial group.[25]

The Supreme Court has recognized that a *prima facie* case can be supported by a disparity with respect to the proportion of jurors of a particular race that are struck versus the proportion of that race in the venire.[26] In *Miller-El*, the prosecutors struck ten African-Americans.[27] These strikes resulted in the exclusion of ninety-one percent of the eligible African-American venire members despite the fact that African-Americans constituted less than twenty percent of the venire.[28] The Supreme Court found that such a result was unlikely to occur by happenstance.[29]

But a statistical disparity could easily result from happenstance if the sample size is extremely small. In *United States v. Vaccaro*, the Ninth Circuit concluded that striking the only two African-Americans on the venire "does not constitute such a pattern indicating a systematic exclusion of blacks."[30] The Ninth Circuit later explained this holding in *Fernandez v. Roe*: "Two challenges out of two venirepersons are not always enough to establish a *prima facie* case. Because the numbers are so small (and, hence, potentially unreliable), two such challenges, standing alone,

---

[24] *Johnson*, 545 U.S. at 168-73.

[25] *Wamget v. State*, 67 S.W.3d 851, 857-58 (Tex. Crim. App. 2001).

[26] *Miller-El*, 545 U.S. at 240-41.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 241.

[30] 816 F.2d 443, 457 (9th Cir. 1987).

may not be sufficient to support an inference of discrimination."[31] The court found, however, that the two strikes against the only African-Americans on the panel were enough to support an inference of discrimination in the case before it because the party had also struck four out of seven Hispanics, who were only about twelve percent of the venire.[32]

The Eleventh Circuit has explained that "an inference of discrimination based on the number of jurors of a particular race may arise where there is a substantial disparity between the percentage of jurors of one race struck and the percentage of their representation on the jury," but then it pointed to a case where the trial court found "although the percentage of black jurors struck from a jury panel might establish a *prima facie* case in some instances, here it does not because … the number of black persons on the regular panel was small."[33] In *Bennett v. Gaetz*, the Seventh Circuit declined to find that a *prima facie* case had been established when the "only real evidence of discrimination" was that the prosecution "used two of its four peremptories, or 50%, against African-Americans, who comprised just five of the twenty-eight venire members, or 18%."[34] The Seventh Circuit concluded that "it is difficult to draw significance from this disparity, given the relatively small numbers of African-American prospective jurors and peremptory challenges in this case."[35]

In *People v. Bell*, the Supreme Court of California held that a *prima facie* case had not been

---

[31] 286 F.3d 1073, 1078 (9th Cir. 2002).

[32] *Id.* at 1078-79.

[33] *Central Ala. Fair Hous. Ctr. v. Lowder Realty Co.*, 236 F.3d 629, 637 (11th Cir. 2000) (quoting *United States v. David*, 662 F. Supp. 244, 246 (N.D. Ga. 1987)) (ellipsis in *Central Ala. Fair Hous. Ctr.*).

[34] 592 F.3d 786, 791 (7th Cir. 2010).

[35] *Id.*

established by a prosecutor's use of peremptory strikes against two out of three African-American women.[36] The court remarked, "[T]he small absolute size of this sample makes drawing an inference of discrimination from this fact alone impossible."[37] The court further explained: "Although circumstances may be imagined in which a *prima facie* case could be shown on the basis of a single excusal, in the ordinary case, including this one, to make a prima facie case after the excusal of only one or two members of a group is very difficult."[38]

On the other hand, the District of Columbia Court of Appeals concluded that a *prima facie* case had been established when a party used *three* strikes to eliminate three of the only five non-African-Americans on the venire (and the only three within the strike zone), resulting in an all African-American jury.[39]

We conclude that the statistics in the present case are not by themselves sufficient to establish a *prima facie* case of discrimination given the small sample sizes involved. Striking just one Asian in the present case results in a statistical disparity because there were only two Asians on the panel. Asians constituted only fourteen percent of the venire,[40] but striking just one Asian results in an exclusion ratio of fifty percent of Asians. African-Americans were thirty-six percent of the panel.

---

[36] 40 Cal. 4th 582, 597-98, 54 Cal. Rptr. 3d 453, 465-66 (2007).

[37] *Id.*

[38] 40 Cal. 4th at 598 n.3, 54 Cal. Rptr. 3d at 466 n.3.

[39] *Capitol Hill Hosp. v. Baucom*, 697 A.2d 760, 761, 765 (D.C. App. 1997) ("Although statistics may be less elucidating when based on a small sample, the fact that Baucom's counsel used all of his strikes on a small pool of potential Caucasian jurors strengthens the conclusion that the trial court should not have discounted the statistics.").

[40] For ease of reference, all of our calculations are rounded to the nearest whole number.

If we compared the percentage of the strikes exercised to the percentage of those type of jurors on the panel, then exercising one strike (thirty-three percent) against an African-American would be slightly less than the proportion of those persons on the panel, but exercising two strikes (sixty-seven percent) would be substantially greater than that proportion. On the other hand, there is no significant disparity if the proportion of African-Americans struck by the State (two out of five, or forty percent) is compared to the proportion of African-Americans on the panel (thirty-six percent).

Viewing the statistics from a different angle, one could observe that African-Americans constituted the largest racial group in the venire, so one would expect that more peremptory strikes would be exercised against African-Americans than against any of the other groups. With only three peremptory strikes, the only way for the State to exercise more strikes against African-Americans than any other group would be to strike two of them—as occurred in the present case.

The decisions discussed above suggest that a *prima facie* case can rarely, if ever, be based solely on a statistical analysis when fewer than three strikes have been exercised against persons belonging to the cognizable group. In the present case, the State struck only two African-Americans and only one Asian. Had the State struck three venire members belonging to a cognizable racial group (which could have occurred in the present case with either three African-Americans, three Hispanics, or three Caucasians), then we might agree that the statistical distribution of the strikes would have been minimally sufficient to establish a *prima facie* case. But that did not occur here.

The State can be said to have exercised three strikes against a cognizable racial group only if African-Americans and Asians can be considered part of the same group. If we conceptualized the cognizable racial group as "racial minority," then they would be part of the same group, but that group would constitute seventy-nine percent of the venire. By no stretch of the imagination can three

strikes distributed across seventy-nine percent of the venire be considered a *prima facie* case of discrimination.

Finally, we point out that the jury was racially diverse, with the racial composition of the jury corresponding roughly to the racial composition of the venire. Those ratios of jury members compared to the venire were: thirty-three percent compared to thirty-six percent for African-Americans, thirty-three percent compared to twenty-nine percent for Hispanics, seventeen percent compared to fourteen percent for Asians, and seventeen percent compared to twenty-one percent for Caucasians.

Of course, saying that statistics alone do not establish a *prima facie* case does not end the inquiry. The Supreme Court has instructed that all circumstances are relevant, so other circumstances might, when combined with otherwise insufficient statistics, give rise to a *prima facie* case of discrimination. But appellant's proffer of other circumstances is insubstantial. As we pointed out earlier, the record appears to contradict the claim that Thomas rated police officers an "eight," and there were three other African-Americans that the State did not strike, only one of whom, Perkins, rated police officers an "eight." Meanwhile, appellant struck Perkins but did not strike Thomas, so the parties seemed to agree that Perkins was a relatively good juror for the State and Thomas was a relatively good juror for the defense. We do not see any significance to the occupations of the struck venire members, and we observe that none appeared to be connected to law enforcement. And while Lee gave a low rating for defense attorneys, that fact in no way suggests that the State's single strike against an Asian venire member was based on race, nor does the record suggest any relationship between Lee's answer and the treatment of the African-American venire members. And though appellant complains that the State should have struck Schwartz, Schwartz's

responses in voir dire and appellant's own attempt to have him challenged for cause suggest that Schwartz would, on balance, be a favorable juror for the State.

We hold that the court of appeals erred in concluding that appellant had demonstrated a *prima facie* case. Because appellant failed to demonstrate a *prima facie* case, the State was not required to advance race-neutral reasons for its strikes. The court of appeals erred in abating this case for a retrospective *Batson* hearing and erred in finding a *Batson* violation. The State's ground for review is sustained.[41] We reverse the judgment of the court of appeals and remand the case to that court to address appellant's remaining points of error.

Delivered: June 27, 2012
Publish

---

[41] Due to our disposition of the State's ground for review, the ground for review that we raised on our own motion is dismissed.