

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00040-CR

RUSTY LEE WILLIAMS                                                      APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

A jury convicted Appellant Rusty Lee Williams of having committed aggravated assault with a deadly weapon during an incident of domestic violence, and the trial court assessed his punishment at eight years' confinement. In a single issue, Williams complains that the trial court erred by overruling his objection to the State's request for a jury shuffle. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Jury Shuffle

The record reflects that there were forty-eight veniremembers. After the trial judge assigned a number to each veniremember and seated the panel, the prosecutor requested a jury shuffle, stating that he had "looked at the array and just made a gut discussion [sic] that [he was] gonna exercise [his] right there." Williams objected to the request, stating that the veniremembers who were Numbers 11, 20, and 22 were all African-American and requesting a race-neutral reason for the shuffle. The prosecutor replied,

> I would just state it's a gut. I looked at the panel as they were seated and made that decision, but it has nothing to do with race. The Court is aware, I've tried many cases where I've never requested shuffles whenever an African-American is in the front array. So it has nothing to do with that.

The trial court overruled Williams's objection and granted the shuffle.

After the shuffle, the veniremember who had been Number 11 became Number 22, the one who had been Number 20 became Number 46, and the one who had been Number 22 became Number 45. After a conversation between the trial court and counsel outside the presence of the other veniremembers, the trial court struck the new Number 22 for cause. The jury was selected from the first thirty-four veniremembers; the trial court excused nine in that group for cause and each side exercised ten peremptory challenges. There is no indication from the record that the State exercised its peremptory challenges in a discriminatory manner when it struck four women and six men.

2

Relying on *Miller-El v. Dretke*, 545 U.S. 231, 125 S. Ct. 2317 (2005), and *Ladd v. State*, 3 S.W.3d 547 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000), Williams argues that the trial court erred by overruling his objection to the jury shuffle because the prosecutor did not offer a race-neutral explanation under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986), for displacing three African-American veniremembers.  The State responds that *Batson* has not been extended to jury shuffle requests and that there is no legal requirement that a reason for a jury shuffle be given.[2]

The State is correct.  *See Ladd*, 3 S.W.3d at 563 n.9 (stating in dicta that the court does not endorse the view that *Batson* extends to jury shuffles); *Wamsley v. State*, No. 02-06-00089-CR, 2008 WL 706610, at *6–7 (Tex. App.—Fort Worth Mar. 13, 2008, pet. ref'd) (mem. op., not designated for publication); *see also* Tex. Code Crim. Proc. Ann. art. 35.11 (West 2006) (stating that the defendant or the State may demand a jury shuffle); *Watkins v. State*, 245 S.W.3d 444, 448–49 (Tex. Crim. App.) (explaining that under *Miller-El*, the State's using a jury shuffle in a manner supporting an inference of racial discrimination is to be

---

[2]*Batson* itself first requires that the opponent of a peremptory strike establish a prima facie case of racial discrimination; that a race-neutral explanation then be proferred for the use of the strike; and then that the trial court determine whether the strike's opponent has carried his burden of persuasion to show by a preponderance of the evidence that the strike was a product of purposeful discrimination.  *Blackman v. State*, 414 S.W.3d 757, 764 (Tex. Crim. App. 2013), *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009).

considered in *Batson*'s third stage), *cert. denied*, 555 U.S. 846 (2008); *Ford v. State*, 73 S.W.3d 923, 926 (Tex. Crim. App. 2002) ("[W]hile the jury shuffle may sometimes be used by the parties as a strategic tool, the purpose of the statute is merely to ensure that the members of the venire are listed in random order."); *Como v. State*, 557 S.W.2d 93, 94 (Tex. Crim. App. 1977) (stating that under article 35.11, a defendant or the State, upon demand, is entitled to have the jury panel redrawn in accordance with its provisions and that "[c]ause or reason need not be assigned"). *But see Ramey v. State*, No. AP-75678, 2009 WL 335276, at *2 (Tex. Crim. App. Feb. 11, 2009) (not designated for publication) (declining to hold that *Miller-El* overruled *Ladd* but considering sufficiency of State's race-neutral explanation for requesting a jury shuffle), *cert. denied*, 558 U.S. 836 (2009).[3]

We previously addressed the same argument and similar circumstances in *Wamsley*, stating,

> In the case before us, the State requested a shuffle of the panel after the venire was assembled. Appellant objected to the shuffle on the basis of *Batson v. Kentucky*, arguing that the motive for the shuffle was not race-neutral due to the disproportionate number of minorities in the first seventy-five panel members. The trial court overruled the objection.
>
> Despite Appellant's attempt to persuade this court that *Batson* is applicable to jury shuffles, we have not found, nor has Appellant shown us, any case law that directly applies *Batson* to a jury shuffle.

---

[3]Unpublished opinions are not precedential. *Coble v. State*, 330 S.W.3d 253, 276 n.56 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 3030 (2011); *see also* Tex. R. App. P. 77.3.

4

In contrast, the court of criminal appeals averred in *Ladd*, alb[ei]t in dicta, that it does not endorse the view that *Batson* applies to jury shuffles. Appellant attempts to support his position by directing us to *Miller-El v. Dretke*, in which the United States Supreme Court held that the prosecutor's jury shuffle request was a clue indicating his intent to use his peremptory challenges in a discriminatory fashion. Although this case demonstrates that the prosecution's use of a jury shuffle may be examined in determining whether broader patterns of discriminatory practice are used during jury selection, the court did not definitively hold that a *Batson* challenge extends beyond peremptory challenges and into the realm of jury shuffles. Therefore, we will not make such a determination either. Because Appellant asserts a position that is not supported by precedent, we overrule his seventh point.

2008 WL 706610, at *7 (citations omitted); *see also Wearren v. State*, 877 S.W.2d 545, 546 (Tex. App.—Beaumont 1994, no pet.) (declining to extend *Batson* to jury shuffles but noting that even if *Batson* could be so applied, "appellant failed to establish a prima facie case, there being no indication in the record of its effect on minority venirepersons"); *Urbano v. State*, 808 S.W.2d 519, 520 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (refusing to extend *Batson* to jury shuffles).

Additionally, based on the record before us, although Williams identified three potential jurors as African-American during voir dire, he did not indicate the composition of the rest of the panel.[4] *Cf. Hassan v. State*, 369 S.W.3d 872, 878

---

[4]From the record before us, despite the ambiguity of some first names, it appears that there were fifteen women and thirty-three men on the panel. The original panel was composed of twelve women and fifteen men in the first twenty-seven potential jurors who, after challenges for cause and peremptory strikes, would have composed the jury. After the shuffle, there were fourteen women and twenty men in the first group of thirty-four potential jurors from which the actual jury was selected after challenges for cause and peremptory strikes. Two

(Tex. Crim. App. 2012) (comparing the racial composition of the jury and the panel with regard to *Batson* challenge).

Further, Williams did not raise any further *Batson* objections at the conclusion of voir dire. *Cf. id.* at 875–76 (noting that a prima facie case "can be supported by a disparity with respect to the proportion of jurors of a particular race that are *struck* versus the proportion of that race in the venire" (emphasis added)). And the prosecutor's statement about his gut as the basis for requesting the shuffle does not appear, on its face, to be an impermissible reason. *See Blackman*, 414 S.W.3d at 761 (noting that with regard to *Batson* hearing, prosecutor stated that he did not feel like he "had the same vibe" as one of the African-American jurors, in addition to other reasons, and that he had also felt that vibe from some of the other potential jurors, some of whom were white, on whom he had exercised peremptory strikes);[5] *Nieto v. State*, 365 S.W.3d 673, 680 (Tex. Crim. App. 2012) (stating that a veniremember's demeanor, including

___

women and ten men made up the jury for this domestic violence-based case. Peremptory strikes used to exclude potential jurors based on gender are also impermissible, *see Guzman v. State*, 85 S.W.3d 242, 244–45 (Tex. Crim. App. 2002), but Williams did not raise a *Batson* challenge to gender disparity at trial and does not raise one on appeal.

[5]In *Blackman*, the court of criminal appeals reiterated that in making a *Batson* challenge, the defendant, as the opponent of the strikes, had the ultimate burden of persuasion and held that the trial court's finding that the prosecutor had made a genuine racially neutral, demeanor-based explanation was not clearly erroneous when the defendant never challenged the sincerity of the prosecutor's assessment of the veniremember's demeanor. 414 S.W.3d at 769–70.

"poor" facial expressions and body language, is a valid reason to exercise a peremptory strike); *Davis v. Fisk Elec. Co.*, 268 S.W.3d 508, 517–18 (Tex. 2008) (stating that peremptory strikes "may legitimately be based on nonverbal conduct" but that such reasons should be identified because, without additional record support, they "would strip *Batson* of meaning"); *see also Ramey*, 2009 WL 335276, at *2 (stating that prosecutor's explanation—that he had requested shuffle because the overwhelming majority of the veniremembers he had been told were good for the State were towards the back of the panel—was sufficiently race-neutral). On the record before us, even if *Batson* were to apply here, we cannot say that the trial court abused its discretion by overruling Williams's objection. *Cf. Hassan*, 369 S.W.3d at 878. We overrule Williams's sole issue.

## III. Conclusion

Having overruled Williams's sole issue, we affirm the trial court's judgment.


PER CURIAM

PANEL: MCCOY, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 13, 2014

7